UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUI-YANG HUANG,<br><br>                          Plaintiff,<br><br>          -against-<br><br>ADVANCED BATTERY TECHNOLOGIES, INC.<br>                          Defendant. | Index No. 1:09 CIV 08297 (HB) (MHD) |

## 付治国为支持被告 **ABAT** 公司撤案申请所做的声明

本人付治国声明：

1.      本人是哈尔滨中强能源科技有限公司（简称"ABAT"）的首席执行官。本人自 2004 年以来一直担任 ABAT 的首席执行官。作为首席执行官，我负责管理 ABAT 的业务、战略、财务事宜以及 ABAT 与高级雇员及其它公司的谈判。

2.      本人是中华人民共和国公民，中文流利。本人不会讲英文，也不懂英文。本人现住中华人民共和国。本人也曾经到深圳拜访过黄先生。

3.      ABAT 是在特拉华州成立的，但其总部位于中华人民共和国黑龙江省哈尔滨市。

4.      ABAT 开发、生产并经销可充电聚合物锂离子电池。公司的产品包括电动汽车、摩托车、矿灯、笔记本电脑及其它电子设备使用的可充电聚合物锂离子电池。

5.　　　　作为母公司，ABAT 有两家中国子公司，包括中强能源科技有限公司（由本人于 2002 年创立）和无锡中强自动车有限公司，在英属维尔京群岛也有一家子公司，名为 Cashtech, Inc.。ABAT 没有任何美国子公司。

6.　　　　ABAT 的各种管理职位设于位于中国黑龙江省哈尔滨市的总部。除高级副总裁张书源(Dan Chang)及其它行政人员之外，大部份 ABAT 的所有管理人员均全部或主要在中国工作。这些管理人员包括我本人和财务总监万国华(Guohua Wan)。

7.　　　　ABAT 的生产设施全部位于中国。其最大的工厂位于哈尔滨及无锡。

8.　　　　ABAT 的哈尔滨工厂雇有大约 607 名职工，无锡约有 250 名职工。ABAT 在中国共有大约 860 名雇员。据本人所知，职工似乎都是中文为母语。

9.　　　　ABAT 在纳斯达克资本市场上市。为协助处理与在纳斯达克上市有关的投资者关系，ABAT 在纽约设有一个小型办事处。ABAT 的纽约办事处有四名雇员。与原告诉状指称的情况相反，该纽约办事处绝非 ABAT 的主要经营场所。

10.　　　据本人所知，深圳喜胜科技有限公司（现名"SABAT"）的全部雇员均在中国深圳生活和工作。SABAT 用中文保存其业务记录。本人对于深圳喜胜科技有限公司的谈判是在位于中国南部的深圳市进行的，所用语言为中文。

11.　　　本人还通过谈判商定了 ABAT 和黄穗阳先生之间的聘用合同。这些谈判是在哈尔滨市进行的，所用语言为中文。

12.　　　根据聘用合同，黄先生在五年聘用期限内将按比例获得股份。因此，ABAT 于 2009 年 1 月（黄先生受聘近五个月后）授予黄先生 60,000 股股份，即黄先生在五年聘用合同期间应获得的股份的五分之一。

13.　　本人与黄先生之间有关聘用合同和薪酬方案的所有谈话都是在中国进行的，所用语言为中文。

14.　　ABAT 曾期望，为履行聘用合同规定的职责，黄先生将主要在中国深圳工作，但他会根据需要到 ABAT 的黑龙江总部和中国境内的其它工厂出差。据本人所知，黄穗阳先生一直在中国深圳或中国境内的 ABAT 总部或其它工厂履行其工作义务（就已经履行的义务而言）。

15.　　因为黄先生的工资最初是用美元支付，在 2009 年 8 月份之前，对黄先生的工资支付是通过纽约办事处进行的。黄先生和纽约办事处从未有过任何其他联系。纽约办事处从未参与对黄先生的聘用、对其聘用合同的商定或对其工作的监督。本人既未获悉纽约办事处有任何与黄先生的主张有关的文件，也未获悉纽约办事处有任何人对黄先生的权利主张有任何了解。对黄先生聘用合同的谈判、履行以及黄先生对其聘用合同的违反均不是在纽约办事处进行的。

16.　　自 2009 年夏末起，黄先生便不再按时上班。即使上班，他往往不会工作一整天。相反，短短几个小时候后他就会离开。此外，黄先生对屡次要求其按聘用合同履行工作职责的直接命令视而不见。

17.　　10 月份，ABAT 发出通知，命黄审定哈尔滨工厂的新设备采购和旧设备改造工作。这些均属聘用合同中载明的工作职责。通知是用中文写的，而是从哈尔滨市送到深圳市的。黄未对以上任何命令做出答复，也未执行其须执行的工作。他根本没有为履行其工作职责采取任何行动。

18.    ABAT 向黄发出了两份正式通知，要求他履行其工作职责。在黄无视这两份通知甚至未以任何方式就此做出答复后，公司别无选择，只能终止对黄先生的聘用。ABAT 于 2009 年 11 月 13 日向黄发函，终止了对他的聘用。

19.    在聘用合同理，黄先生保证他持有的权力在合同期内这些权利不会出现任何法律纠纷。本人了解，黄先生仅持有一项合法的美国专利及其所主张的中国专利的一小部分。

20.    2009 年秋，黄先生多次与万国华商谈要求得到全部股份。本人也与黄先生谈过他的要求。九月的某个时间，黄先生打电话给我要求继续就此商谈。我告诉黄先生，在我方支付其薪水并无任何过错的情况下，他起诉 ABAT 是无耻行为，因为黄先生经常不来上班，即使上班，他一般呆几个小时就走了，我还特别问他到底想不想来上班。我告诉他如果必要，我不怕跟他打官司。后来当他的律师发给 ABAT 一份部分这次谈话的录音拷贝，我才发现黄先生偷偷地录下了这次谈话。我很震惊，并因黄先生违背了我的信任及其律师的行为深感困扰。我没有发给黄先生任何短信威胁他，也没有理由相信 ABAT 的任何人发过任何短信。发短信不是我的交流方式。ABAT 查了我们执行官们的电话号码，这些号码与黄先生的律师提供的发短信的号码根本不符。

21.    ABAT 的供应商可以作为本次事件的重要证人。ABAT 认为黄先生拒绝按合同要求监督新设备安装工作的行为部分违反了其聘用合同。因为根据 ABAT 供应商合同的规定，技术总监须监督所有新设备的安装工作，黄先生拒绝履行其监督职责的行为导致了严重延误，并给 ABAT 的生产计划造成了不利影响。ABAT 的供应商几乎都是中国公司。

22.     ABAT 尚未对黄先生的诉状提交答辩状，而是选择请法院将其本身视为对处理双方争议不适当的受理法院。但在时间适当时，无论黄先生的诉讼是在美国法院还是在中国法院继续进行，ABAT 均计划反驳黄先生提出的认为 ABAT 违反了其聘用合同的主张。认为黄先生的诉讼没有法律依据的理由包括：(a) 他对聘用合同的解释依赖的是对该合同的错误翻译，所依据的合同解释方法与合同简单明了的条款（中文）以及 ABAT 的标准聘用报酬惯例相左；以及(b)由于对各项专利所有权状况做出不实陈述及不履行其工作职责，黄先生已自己违反了聘用合同。

23.     ABAT 的业务记录一般是用中文保存于中国的，包括 ABAT 和黄先生之间的聘用合同。就本人所知，ABAT 掌握的与黄先生的聘用合同有关的全部通信、票据和其它文件用的也都是中文，包括全部出勤和工作表现记录，以及与黄的专利有效性有关的全部证明。

24.     作为该法院撤销此项待决案件转由中国法院审理的条件，ABAT 同意采取下列全部行动：

- 为对本项民事诉讼提出抗辩，同意服从中国法院的管辖权；

- 在撤销此项诉讼后，将任何适用的诉讼时效中止 120 天时间；

- 向中国法院提供由 ABAT 掌握、保管或控制的，中国法院认为有关的任何证人或文件；以及

- 支付上诉后中国法院针对 ABAT 判处的任何款项。

　　本人声明，上述内容是真实、准确的，否则愿根据美利坚合众国法律接受伪证罪处

罚。

2009年___12___月___4___日于中华人民共和国_____签字

付沼国



**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK          )
                          )
                          )     ss
COUNTY OF NEW YORK          )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Chinese into English of the attached Declaration of Zhiguo Fu.

Kathryn Wolf Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this  5  day of  December , 20 09 .

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. **tel** 212.631.7432 **fax** 212.631.7778
San Francisco  220 Montgomery Street, 3rd Floor, San Francisco, CA 94104, U.S.A. **tel** 415.576.9500 **fax** 415.520.0525
London  107-111 Fleet Street, London EC4A 2AB, United Kingdom **tel** +44.(0)20.7936.9002 **fax** +44.(0)20.7990.9909
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong **tel** +852.2159.9143 **fax** +852.3010.0082
translations@geotext.com  |  www.geotext.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUI-YANG HUANG,<br>                    Plaintiff,<br><br>                    -against-<br><br>ADVANCED BATTERY TECHNOLOGIES, INC.<br>                    Defendant. | Index No. 1:09 CIV 08297 (HB) (MHD) |

FU Zhiguo's declaration in support of Defendant ABAT's application for dismissal

I, FU Zhiguo, declare:

1. I am the CEO of Harbin Zhongqiang Energy Science and Technology Co. Ltd. (abbreviated "ABAT"). I have been the CEO of ABAT since 2004. As CEO, I am in charge of managing matters pertaining to ABAT's business, strategy, and finances, and negotiations between ABAT and its senior employees and other companies.

2. I am a citizen of the People's Republic of China and am fluent in Chinese. I cannot speak English, and I do not understand English. I currently live in the People's Republic of China. In the past, I have also visited Mr. HUANG in Shenzhen.

3. ABAT is incorporated in Delaware, but its headquarters are located in Harbin, Heilongjiang Province, the People's Republic of China.

4. ABAT develops, produces and sells rechargeable polymer lithium-ion batteries. The company's products include rechargeable polymer lithium-ion batteries for use in electric automobiles, motorcycles, miner's lamps, notebook computers, and other electronic equipment.

5. As a parent company, ABAT has two Chinese subsidiary companies, Zhongqiang Energy Science and Technology Co. Ltd. (established by myself in 2002) and Wuxi Zhongqiang Autocycle Co. Ltd.; and it also has a subsidiary in the British Virgin Islands, called Cashtech, Inc. ABAT does not have an American subsidiary.

6. ABAT's various management positions are at the company headquarters located in Harbin, Heilongjiang Province, China. Except for senior vice president ZHANG Shuyuan (Dan CHANG) and other executives, most of ABAT's management personnel work solely or primarily in China. These management personnel include myself and Chief Financial Officer WAN Guohua.

7. All of ABAT's production facilities are located in China. The company's biggest plants are located in Harbin and in Wuxi.

8. ABAT's Harbin plant employs approximately 607 employees; Wuxi employs approximately 250 employees. ABAT has a total of approximately 860 employees in China. As far as I know, I believe that the Chinese language is the mother tongue of all of these employees.

9. ABAT is listed on the NASDAQ Capital Market. To assist in handling investor relationships associated with our being listed on NASDAQ, ABAT has a small office in New York. ABAT's New York office has four employees. Contrary to what is alleged in the Plaintiff's complaint, this New York office is not ABAT's primary place of business.

10. As far as I know, all the employees of Shenzhen Xisheng Science and Technology Co. Ltd. (now called "SABAT") live and work in Shenzhen, China. SABAT's business records are kept in Chinese. My negotiations with regard to Shenzhen Xisheng Science and Technology Co. Ltd. were conducted in Shenzhen, a city located in southern China, and were conducted in Chinese.

11. I also decided the employment contract between ABAT and Mr. HUANG Suiyang, through negotiations. These negotiations were conducted in Harbin and were conducted in Chinese.

12. In accordance with the employment contract, Mr. HUANG would receive shares on a *pro rata* basis during his five-year term of employment. Thus, in January 2009 (approximately five months after Mr. HUANG had been hired), ABAT conferred 60,000 shares of stock to Mr. HUANG, or one-fifth of the shares that Mr. HUANG was to receive over the course of his five-year term of employment.

13. All my negotiations with Mr. HUANG with regard to an employment contract and compensation plan were conducted in China and were conducted in Chinese.

14. ABAT had expected that, in performing the responsibilities stipulated in his employment contract, Mr. HUANG would primarily work in Shenzhen, China, but that when necessary he would visit ABAT's headquarters in Heilongjiang and ABAT's other plants in China. As far as I know, Mr. HUANG Suiyang performed his work obligations (that is, to the extent that his obligations were performed) in Shenzhen, China, or at ABAT's headquarters or its other plants in China.

15. Because Mr. HUANG's salary was initially paid in United States dollars, prior to August 2009, Mr. HUANG's salary was paid through the New York office. There has never been any other contact between Mr. HUANG and the New York office. The New York office never participated in the hiring of Mr. HUANG, in the negotiation and deciding of his employment contract, or in the supervision of his work. I am not aware of the New York office possessing any documents related to Mr. HUANG's claims, nor am I aware of anyone at the New York office having any knowledge of Mr. HUANG's claims. Neither the negotiations regarding Mr. HUANG's employment contract, the performance of his employment contract, nor Mr. HUANG's violation of his employment contract took place at the New York office.

16. Beginning at the end of the summer of 2009, Mr. HUANG stopped coming to work on time. And even when he came to work, he frequently would not work the entire day. Rather, he would leave after just a few hours. In addition, Mr. HUANG ignored direct orders, which he was given repeatedly, to perform his job responsibilities in accordance with his employment contract.

17. In October, ABAT issued a notice instructing HUANG to examine and approve the work pertaining to the acquisition of new equipment and the renovation of old equipment for the Harbin plant, job responsibilities that are explicitly stated in his employment contract. The notice was issued in Chinese and was sent from Harbin to Shenzhen. HUANG did not reply to any of the above instructions, and nor did he perform the work he was required to perform. He simply took no action at all to perform his job responsibilities.

18. ABAT sent HUANG two official notices requesting that he perform his job responsibilities. After HUANG not only disregarded both of these notices but also failed to give a response of any kind, the company had no other option than to terminate Mr. HUANG's employment. On November 13, 2009, ABAT sent HUANG a letter terminating his employment.

19. In his employment contract, Mr. HUANG guaranteed that no legal challenges of any kind would arise with regard to the patents in his possession. I understand that Mr. HUANG is only in possession of one valid United States patent and a small portion of the Chinese patents claimed by him.

20. In the fall of 2009, Mr. HUANG had multiple discussions with WAN Guohua in which Mr. HUANG asked to be given all of his shares. I also had discussions with Mr. HUANG regarding this request. On one occasion in September, Mr. HUANG telephoned me, asking to continue discussing this matter with me. I told Mr. HUANG that, for him to sue ABAT given that we were paying his salary and were innocent of any malfeasance, was a shameless act; and I especially asked Mr. HUANG if he planned on coming to work at all, given that he frequently didn't come to work and, even when he did show up, he generally left after a few hours. I told him that, if it became necessary, I was unafraid of engaging in a lawsuit with him. It was only later, after his lawyer sent ABAT a copy of a recording of a portion of this conversation, that I realized that Mr. HUANG had surreptitiously recorded this conversation. I was extremely shocked and felt deeply disturbed by Mr. HUANG's violation of my trust and by his lawyer's behavior. I never sent Mr. HUANG a text message in which I threatened him, nor do I have any reason to believe that anyone at ABAT sent any such text message. It is not my practice to communicate by means of text messaging. ABAT checked the telephone numbers belonging to our executives and found that these numbers were simply not the same as those provided by Mr. HUANG's lawyer as the source of the text messages in question.

21. ABAT's suppliers can serve as important witnesses with regard to this incident. ABAT believes that Mr. HUANG's actions in refusing to supervise the installation of the new equipment in accordance with the requirements of his contract constitute a breach of this portion his employment contract. Because the Chief Technical Officer is required, in accordance with the provisions of ABAT's supplier contract, to supervise the installation of all new equipment, Mr. HUANG's actions in refusing to perform his supervisory responsibilities resulted in serious delays and had a negative impact on ABAT's production plan. ABAT's suppliers are almost all Chinese companies.

22. ABAT has not submitted an answer to Mr. HUANG's complaint but rather has chosen to petition the court to designate itself as not competent to hear the dispute between the parties. However at the appropriate time, whether Mr. HUANG's suit is tried in a United States court or a Chinese court, ABAT plans to refute Mr. HUANG's claim that ABAT has violated his employment contract. Reasons for our belief that Mr. HUANG's suit lacks a basis in law include: (a) His interpretation of the employment contract is reliant on an erroneous translation of this contract, and this interpretation is at odds both with simple, clear contract provisions (Chinese) and with ABAT's standard practices regarding compensation for employment; and (b) Mr. HUANG is himself in breach of his employment contract in that he made false statements regarding various patent rights and failed to perform his job responsibilities.

23. In general, ABAT's business records are kept in Chinese and are kept in China; this includes the employment contract between ABAT and Mr. HUANG. As far as I know, all correspondence, bills, and other documents in ABAT's possession pertaining to Mr. HUANG's employment contract are also in Chinese, including all attendance and work performance records, as well as all documentation of the validity of HUANG's patents.

24. As a condition of this court's dismissal of this pending case and the transfer of this case to a Chinese court, ABAT agrees to take all of the following actions:

- consent to a Chinese court's jurisdiction for these civil matters;

- toll any applicable statute of limitations for 120 days after *forum non conveniens* dismissal by this court;

- make available in the courts of China any evidence or witnesses in its possession, custody, or control in the United States that a Chinese court hearing these cases may deem relevant, and;

- pay any final, post-appeal judgment awarded against it by a Chinese court.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Signed on <u>December 4</u>, 2009 in <u>Harbin</u>, the People's Republic of China.

<u>[signature:] FU Zhiguo</u>
FU Zhiguo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUI-YANG HUANG, | Index No. 1:09 CIV 08297 (HB) (MHD) |
| Plaintiff, | |
| -against- | |
| ADVANCED BATTERY TECHNOLOGIES, INC. | |
| Defendant. | |

### 付治国为支持被告 ABAT 公司撤案申请所做的声明

本人付治国声明:

1.　　本人是哈尔滨中强能源科技有限公司(简称"ABAT")的首席执行官。本人自 2004 年以来一直担任 ABAT 的首席执行官。作为首席执行官,我负责管理 ABAT 的业务、战略、财务事宜以及 ABAT 与高级雇员及其它公司的谈判。

2.　　本人是中华人民共和国公民,中文流利。本人不会讲英文,也不懂英文。本人现住中华人民共和国。本人也曾经到深圳拜访过黄先生。

3.　　ABAT 是在特拉华州成立的,但其总部位于中华人民共和国黑龙江省哈尔滨市。

4.　　ABAT 开发、生产并经销可充电聚合物锂离子电池。公司的产品包括电动汽车、摩托车、矿灯、笔记本电脑及其它电子设备使用的可充电聚合物锂离子电池。

5.　　　作为母公司，ABAT 有两家中国子公司，包括中强能源科技有限公司（由本人于 2002 年创立）和无锡中强自动车有限公司，在英属维尔京群岛也有一家子公司，名为 Cashtech, Inc.。ABAT 没有任何美国子公司。

6.　　　ABAT 的各种管理职位设于位于中国黑龙江省哈尔滨市的总部。除高级副总裁张书源(Dan Chang)及其它行政人员之外, 大部份 ABAT 的所有管理人员均全部或主要在中国工作。这些管理人员包括我本人和财务总监万国华(Guohua Wan)。

7.　　　ABAT 的生产设施全部位于中国。其最大的工厂位于哈尔滨及无锡。

8.　　　ABAT 的哈尔滨工厂雇有大约 607 名职工，无锡约有 250 名职工。ABAT 在中国共有大约 860 名雇员。据本人所知，职工似乎都是中文为母语。

9.　　　ABAT 在纳斯达克资本市场上市。为协助处理与在纳斯达克上市有关的投资者关系，ABAT 在纽约设有一个小型办事处。ABAT 的纽约办事处有四名雇员。与原告诉状指称的情况相反，该纽约办事处绝非 ABAT 的主要经营场所。

10.　　　据本人所知，深圳喜胜科技有限公司（现名"SABAT"）的全部雇员均在中国深圳生活和工作。SABAT 用中文保存其业务记录。本人对于深圳喜胜科技有限公司的谈判是在位于中国南部的深圳市进行的，所用语言为中文。

11.　　　本人还通过谈判商定了 ABAT 和黄穗阳先生之间的聘用合同。这些谈判是在哈尔滨市进行的，所用语言为中文。

12.　　　根据聘用合同，黄先生在五年聘用期限内将按比例获得股份。因此，ABAT 于 2009 年 1 月（黄先生受聘近五个月后）授予黄先生 60,000 股股份，即黄先生在五年聘用合同期间应获得的股份的五分之一。

13.　　本人与黄先生之间有关聘用合同和薪酬方案的所有谈话都是在中国进行的，所用语言为中文。

14.　　ABAT 曾期望，为履行聘用合同规定的职责，黄先生将主要在中国深圳工作，但他会根据需要到 ABAT 的黑龙江总部和中国境内的其它工厂出差。据本人所知，黄穗阳先生一直在中国深圳或中国境内的 ABAT 总部或其它工厂履行其工作义务（就已经履行的义务而言）。

15.　　因为黄先生的工资最初是用美元支付，在 2009 年 8 月份之前，对黄先生的工资支付是通过纽约办事处进行的。黄先生和纽约办事处从未有过任何其他联系。纽约办事处从未参与对黄先生的聘用、对其聘用合同的商定或对其工作的监督。本人既未获悉纽约办事处有任何与黄先生的主张有关的文件，也未获悉纽约办事处有任何人对黄先生的权利主张有任何了解。对黄先生聘用合同的谈判、履行以及黄先生对其聘用合同的违反均不是在纽约办事处进行的。

16.　　自 2009 年夏末起，黄先生便不再按时上班。即使上班，他往往不会工作一整天。相反，短短几个小时候后他就会离开。此外，黄先生对屡次要求其按聘用合同履行工作职责的直接命令视而不见。

17.　　10 月份，ABAT 发出通知，命黄审定哈尔滨工厂的新设备采购和旧设备改造工作。这些均属聘用合同中载明的工作职责。通知是用中文写的，而是从哈尔滨市送到深圳市的。黄未对以上任何命令做出答复，也未执行其须执行的工作。他根本没有为履行其工作职责采取任何行动。

18.　　ABAT 向黄发出了两份正式通知，要求他履行其工作职责。在黄无视这两份通知甚至未以任何方式就此做出答复后，公司别无选择，只能终止对黄先生的聘用。ABAT 于 2009 年 11 月 13 日向黄发函，终止了对他的聘用。

19.　　在聘用合同理，黄先生保证他持有的权力在合同期内这些权利不会出现任何法律纠纷。本人了解，黄先生仅持有一项合法的美国专利及其所主张的中国专利的一小部分。

20.　　2009 年秋，黄先生多次与万国华商谈要求得到全部股份。本人也与黄先生谈过他的要求。九月的某个时间，黄先生打电话给我要求继续就此商谈。我告诉黄先生，在我方支付其薪水并无任何过错的情况下，他起诉 ABAT 是无耻行为，因为黄先生经常不来上班，即使上班，他一般呆几个小时就走了，我还特别问他到底想不想来上班。我告诉他如果必要，我不怕跟他打官司。后来当他的律师发给 ABAT 一份部分这次谈话的录音拷贝，我才发现黄先生偷偷地录下了这次谈话。我很震惊，并因黄先生违背了我的信任及其律师的行为深感困扰。我没有发给黄先生任何短信威胁他，也没有理由相信 ABAT 的任何人发过任何短信。发短信不是我的交流方式。ABAT 查了我们执行官们的电话号码，这些号码与黄先生的律师提供的发短信的号码根本不符。

21.　　ABAT 的供应商可以作为本次事件的重要证人。ABAT 认为黄先生拒绝按合同要求监督新设备安装工作的行为部分违反了其聘用合同。因为根据 ABAT 供应商合同的规定，技术总监须监督所有新设备的安装工作，黄先生拒绝履行其监督职责的行为导致了严重延误，并给 ABAT 的生产计划造成了不利影响。ABAT 的供应商几乎都是中国公司。

22.    ABAT 尚未对黄先生的诉状提交答辩状,而是选择请法院将其本身视为对处理双方争议不适当的受理法院。但在时间适当时,无论黄先生的诉讼是在美国法院还是在中国法院继续进行,ABAT 均计划反驳黄先生提出的认为 ABAT 违反了其聘用合同的主张。认为黄先生的诉讼没有法律依据的理由包括:(a) 他对聘用合同的解释依赖的是对该合同的错误翻译,所依据的合同解释方法与合同简单明了的条款(中文)以及 ABAT 的标准聘用报酬惯例相左;以及(b)由于对各项专利所有权状况做出不实陈述及不履行其工作职责,黄先生已自己违反了聘用合同。

23.    ABAT 的业务记录一般是用中文保存于中国的,包括 ABAT 和黄先生之间的聘用合同。就本人所知,ABAT 掌握的与黄先生的聘用合同有关的全部通信、票据和其它文件用的也都是中文,包括全部出勤和工作表现记录,以及与黄的专利有效性有关的全部证明。

24.    作为该法院撤销此项待决案件转由中国法院审理的条件,ABAT 同意采取下列全部行动:

- 为对本项民事诉讼提出抗辩,同意服从中国法院的管辖权;

- 在撤销此项诉讼后,将任何适用的诉讼时效中止 120 天时间;

- 向中国法院提供由 ABAT 掌握、保管或控制的,中国法院认为有关的任何证人或文件;以及

- 支付上诉后中国法院针对 ABAT 判处的任何款项。

　　本人声明，上述内容是真实、准确的，否则愿根据美利坚合众国法律接受伪证罪处罚。

　　2009年___12___月___4___日于中华人民共和国_____签字

付治国