UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SUI-YANG HUANG, <br><br>                     Plaintiff, <br><br>          -against- <br><br> ADVANCED BATTERY TECHNOLOGIES, INC. <br>                     Defendant. | Index No. 09 Civ. 8297 (HB) (MHD) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ADVANCED BATTERY TECHNOLOGIES, INC.'S MOTION TO DISMISS**


Mark David McPherson
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0012
Telephone:  (212) 468-8000

*Attorneys for Defendant*
Advanced Battery Technologies, Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ........................................................................................... 1

SUMMARY OF FACTUAL ALLEGATIONS................................................. 2

    A.    The Parties. ....................................................................................... 2

    B.    Plaintiff's Core Contract Claim. ..................................................... 3

    C.    ABAT's Potential Defenses to Plaintiff's Contract Claim. .................... 5

    D.    Plaintiff's Ancillary Claims. ............................................................ 6

ARGUMENT ................................................................................................. 7

I.    THE COURT SHOULD DISMISS THIS CASE ON *FORUM NON CONVENIENS* GROUNDS. ......................................................................... 7

    A.    Plaintiff's Choice Of Forum Is Entitled To No Deference. ................... 8

        1.    Plaintiff Has No Connection To This Forum................................ 8

        2.    Having Chosen To Work For Abat In China, Huang Should Expect To Litigate There. ............................................................ 9

        3.    Plaintiff's Choice Of Forum Is Based On Nothing More Than Forum Shopping. ...................................................................... 9

    B.    China Offers Plaintiff An Adequate Alternative Forum To Consider His Claims................................................................................. 11

    C.    The Private And Public Interest Factors Favor Dismissal. .................... 12

        1.    The Private Interest Factors Strongly Favor Dismissal. ............... 12

            a.    Any Relevant Evidence Is Located In China................................ 12

            b.    This Court May Not Be Able To Obtain The Testimony Of Critical Witnesses. ...................................................... 13

            c.    Trial Could Occur Much More Expeditiously in China. .............. 14

            d.    ABAT's Small New York Office Bears No Relationship to the Dispute................................................ 14

    e. Because The Relevant Evidence Is In Chinese,
     Difficulties in Translation Favor Dismissal...................................15

  2. The Public Interest Factors Strongly Favor Dismissal. ............................17

    a. China Has The Greatest Interest In The Outcome Of
     This Controversy......................................................................18

    b. There Is No Reason To Burden A New York Court And
     Jury With This Dispute. ..............................................................19

    c. This Court Should Not Become Embroiled In The
     Application Of Foreign Law. ........................................................19

II. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS PLAINTIFF'S
 TORT AND IMPLIED CONTRACT CLAIMS FOR FAILURE TO STATE
 A CLAIM FOR RELIEF. .................................................................................22

 A. Huang's Tort Claims Fail Under Chinese Law.....................................22

 B. Huang's Tort and Implied Contract Claims Fail Under New York Law..............22

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abdullahi v. Pfizer, Inc.*,
  562 F.3d 163 (2d Cir. 2009)..................................................................................11

*Alam v. HSBC Bank USA, N.A.*,
  No. 07 Civ. 3540, 2009 U.S. Dist. LEXIS 89438 (S.D.N.Y. Aug. 13, 2009) ........................23

*Alfadda v. Fenn*,
  159 F.3d 41 (2d Cir. 1998)..............................................................................12, 17

*AroChem Int'l v. Buirkle*,
  968 F.2d 266 (2d Cir. 1992)..................................................................................21

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
  448 F.3d 573 (2d Cir. 2006)..................................................................................20

*Blanco v. Banco Indus. de Venezuela S.A.*,
  997 F.2d 974 (2d Cir. 1993)..................................................................12, 15, 17, 21

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
  59 N.Y.2d 314, 464 N.Y.S.2d 712 (1983) ................................................................25

*Calavo Growers of Cal. v. Generali Belgium*,
  632 F.2d 963 (2d Cir. 1980)..................................................................................21

*Campoverde v. Sony Pictures Entm't*,
  No. 01 Civ. 7775, 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002) ........................................23

*Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's, London*,
  No. 08 Civ. 2225 (JGK), 2009 U.S. Dist. LEXIS 20824 (S.D.N.Y. Mar. 16, 2009)................9

*Dabbous v. Am. Express Co.*,
  No. 06 Civ. 11345 (DAB), 2009 U.S. Dist. LEXIS 42741
  (S.D.N.Y. May 8, 2009)..........................................................................13, 18, 19

*Flores v. S. Peru Copper Corp.*,
  253 F. Supp. 2d 510 (S.D.N.Y. 2002), *aff'd*, 414 F.3d 233 (2d Cir. 2003) ............................14

*Gilbert v. Seton Hall Univ.*,
  332 F.3d 105 (2d Cir. 2003)..................................................................................20

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947)............................................................................... *passim*

*ICC Indus. v. Isr. Disc. Bank, Ltd.*,
170 F. App'x 766 (2d. Cir. 2006) ...................................................................9, 12

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*,
311 F.3d 488 (2d Cir. 2002)...........................................................................15

*Iragorri v. United Tech. Corp.*,
274 F.3d 65 (2d Cir. 2001) (en banc)............................................................ *passim*

*Jute v. Hamilton Sundstrand Corp.*,
420 F.3d 166 (2d Cir. 2005)...........................................................................24

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941) ......................................................................................20

*Matter of Allstate Ins. (Stolarz)*,
81 N.Y.2d 219, 597 N.Y.S.2d 904 (1993) .....................................................20

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ......................................................................................24

*Mugavero v. Arms Acres, Inc.*,
No. 03 Civ. 05724, 2009 U.S. Dist. LEXIS 30431 (S.D.N.Y. Mar. 31, 2009).......................24

*Murphy v. Am. Home Prods.*,
58 N.Y.2d 293, 461 N.Y.S.2d 232 (1983) ....................................................24, 25

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
416 F.3d 146 (2d Cir. 2005)...........................................................................11

*Overseas Media, Inc. v. Skvortsov*,
441 F. Supp. 2d 610 (S.D.N.Y. 2006), *aff'd*, 377 F. App'x 92 (2d Cir. 2008).......................17

*Overseas Media, Inc. v. Skvortsov*,
377 F. App'x 92 (2d Cir. 2008) .................................................................17, 19

*Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l, S.A.*,
712 F.2d 11 (2d Cir. 1983).........................................................................19, 21

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981).................................................................................8, 12, 19

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
329 F.3d 64 (2d Cir. 2003)........................................................................8, 10, 15

*Price v. Cushman & Wakefield, Inc*.,
No. 08 Civ. 8900, 2009 WL 3075599 (S.D.N.Y. Sept. 30, 2009)...........................................24

*R. Maganlal & Co. v. M.G. Chem. Co.*,
   942 F.2d 164 (2d Cir. 1991)................................................................................12

*Sanders v. N.Y. City Human Res. Admin.*,
   361 F.3d 749 (2d Cir. 2004)................................................................................24

*Schultz v. Boy Scouts of Am.*,
   65 N.Y.2d 189, 491 N.Y.S.2d 90 (1985) ............................................................21

*Seales v. Panamanian Aviation Co.*,
   No. 07-CV-2901(CPS)(CLP), 2009 U.S. Dist. LEXIS 11855
   (E.D.N.Y. Feb. 18, 2009)....................................................................................9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)..................................................................................... *passim*

*Smukler v. 12 Lofts Realty, Inc.*,
   156 A.D.2d 161, 548 N.Y.S.2d 437 (1st Dep't 1989) ........................................23

*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003)................................................................................24

*Transunion Corp. v. PepsiCo, Inc.*,
   811 F.2d 127 (2d Cir. 1987)................................................................................15

*Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 526 (S.D.N.Y. 2006),
   *aff'd*, No. 06-5464, 2009 U.S. App. LEXIS 14794 (2d Cir. July 7, 2009) ............13

*Turedi v. Coca-Cola Co.*,
   No. 06-5464, 2009 U.S. App. LEXIS 14794 (2d Cir. July 7, 2009) ....................10, 11, 13, 17

*Varnelo v. Eastwind Transp., Ltd.*,
   No. 02 Civ. 2084, 2003 U.S. Dist. LEXIS 1424 (S.D.N.Y. Feb. 3, 2003) ............15

*Wilson v. Echkaus*,
   Nos. 08-3751-cv (L), 08-4116-cv (con), 2009 U.S. App. LEXIS 21416
   (2d Cir. Sept. 30, 2009)......................................................................................8

## RULES

Fed. R. Civ. P. 45(c)(3)(A)(ii) ..................................................................................14

## OTHER AUTHORITIES

Lydia Saad, *China Down, France Up in Americans' Ratings*, Gallup (Mar. 3, 2008),
   http://www.gallup.com/poll/104719/china-down-france-americans-ratings.aspx..................11

Lee S. Kreindler et al., 14 N.Y. Prac., New York Law of Torts § 1:38........................23

Advanced Battery Technologies, Inc. ("ABAT") respectfully submits this memorandum of law in support of its motion to dismiss plaintiff's First Amended Complaint, dated November 17, 2009 (the "Complaint"), on grounds of *forum non conveniens*, or, in the alternative, to dismiss the tort and quasi-contract claims asserted in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for relief.

## INTRODUCTION

This case — in which Advanced Battery Technologies, Inc.'s former Chief Technology Officer accuses the Company of breaching his Employment Contract — has no connection whatsoever to this forum.  Plaintiff Huang Sui-yang is not a New York resident; he resides in China.  ABAT is a Chinese company, with its headquarters in Harbin City, Heilongjiang Province, the People's Republic of China.  All of ABAT's production facilities are located in China.  The Employment Contract at issue was negotiated in China, in Chinese.  Under the Contract, Huang's job duties could only have been performed at ABAT's facilities in China.  All of the alleged conduct forming the basis of plaintiff's tort claims occurred in China.  And all of the witnesses — including the plaintiff — reside in China.  Most speak no English at all.

This is, therefore, a textbook case for dismissal on *forum non conveniens* grounds, in favor of a Chinese forum.  Plaintiff would have this Court hail documents and witnesses from China, force the parties to translate documents and witness testimony for the Court and the jury, and apply Chinese law to a contract dispute (with ancillary tort claims) that has absolutely no connection to this forum.  Courts have wide discretion to dismiss lawsuits such as this on *forum non conveniens* grounds to avoid those very impediments to a just, speedy, and efficient resolution of this dispute.  As the Supreme Court recently put it in an analogous case, events

occurring in China and implicating Chinese law are simply "best left for determination by the Chinese courts." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007).

As a condition of dismissal, ABAT will agree to (1) consent to a Chinese court's jurisdiction for these civil actions, (2) toll any applicable statute of limitations for 120 days after *forum non conveniens* dismissal by this Court, (3) make available in the courts of China any evidence or witnesses in its possession, custody, or control in the United States that a Chinese court hearing these cases may deem relevant, and (4) pay any final, post-appeal judgment awarded against it by a Chinese court. *See* Declaration of Fu Zhigou In Support of Defendant Advanced Battery Technologies, Inc.'s Motion To Dismiss ("Fu Decl."), dated December 4, 2009, at ¶ 24.

In the alternative, and only in the event the Court rules that this Court is an appropriate forum for the dispute, the Court should dismiss plaintiff's second through fifth claims, for failure to state a claim for relief. Those ancillary claims — for intentional infliction of emotional distress, retaliation, breach of the implied covenant of good faith and fair dealing, and prima facie tort — fail, whether they are evaluated under Chinese law or New York law.

## SUMMARY OF FACTUAL ALLEGATIONS

### A.     The Parties.

Plaintiff Huang is not a New York resident. According to the Complaint, he is a U.S. citizen "with residences in Pleasanton, CA and Shenzhen, Guangdong Province, China." Compl., ¶ 1. Although Huang's Complaint does not specify whether his California residence is his domicile, it is obvious from the Complaint that Huang must spend the majority of his time in China: Huang claims to be employed as a professor at the South China University of Technology. *See Id.*, ¶ 6. In addition, Huang's Complaint refers to an ABAT facility in Harbin

China as "located over 1,800 miles from his home," *id*., ¶ 16 & Ex. F, reinforcing the point that his primary residence is in Shenzhen, China (which is approximately 1,800 miles from Harbin).

Defendant ABAT is a Chinese company.  The Company develops, manufactures, and distributes rechargeable Polymer Lithium-Ion batteries.  Fu Decl., ¶ 4.  ABAT's products include rechargeable PLI batteries for electric automobiles, motorcycles, mine-use lamps, notebook computers, and other electronic devices.  *Id*.

Although it is incorporated in Delaware, ABAT's headquarters are in Harbin City, in China.  Fu Decl., ¶ 3.  With the exception of Dan Chang, a Senior Vice President, and some independent directors, ABAT's executives — including Fu, the Company's CEO and Guohua Wan, the Chief Financial Officer — each work exclusively or primarily in China.  *Id*., ¶ 6.  ABAT's production facilities are entirely located in China.  *Id*., ¶¶ 7-8.  Its largest factory is located in Harbin.  *Id*.  In total, ABAT has approximately 860 employees in China.  *Id*., ¶ 8.

### B.      Plaintiff's Core Contract Claim.

Plaintiff's Complaint centers around his claim that ABAT breached his Employment Contract.  *See* Compl., ¶¶ 18-19.  The Contract, which plaintiff attaches to his Complaint, is in Chinese.  *See id*., Ex. B.  Plaintiff also attaches to the Complaint an English translation of the Contract, but as detailed below, that translation is erroneous in several important respects.  *See infra*, at 16-17.  Accordingly, with this motion, ABAT is attaching a correct English translation of the Employment Contract.  *See* Declaration of Mark David McPherson in Support of Defendant Advanced Battery Technologies, Inc.'s Motion To Dismiss ("McPherson Decl."), dated December 7, 2009, Ex. A.

Plaintiff's Employment Contract was executed contemporaneously with the acquisition of Huang's father's company, Shenzhen Shengxi Science and Technology Co., Ltd. ("Shenzhen SST"), by ABAT's Chief Executive Officer, Fu.  *See* Compl., ¶ 7 & Ex. A.  Curiously, the

Complaint refers to Shenzhen SST as "Luke Battery Corp.," Compl., ¶ 6 & Ex. A — a name appearing nowhere in the Acquisition Agreement.  The company was then renamed Shenzhen Zhongqiang Energy Science and Technology Co. Ltd., a name sometimes rendered in English as "Shenzhen ABAT" or "SABAT."  Fu Decl., ¶ 10.  All of SABAT's employees live and work in China, and all of its business records are maintained in Chinese.  *Id.*

Plaintiff's Employment Contract, executed on August 30, 2008, appointed him to serve as ABAT's Chief Technology Officer for a five-year term, from September 1, 2008 to August 11, 2013.  *See* McPherson Decl., Ex. A, § II.  (As detailed below, however, the parties' relationship deteriorated significantly in the last several months, culminating in the Company's termination of Huang on November 13, 2009, due to Huang's material breaches of the Employment Contract.  *See infra*, at 6.)  The Contract listed Huang's duties as the Company's CTO, including "technical training of technical personnel" and "renovation of old equipment." McPherson Decl., Ex. A, at §§ III(8-9).  In consideration for his employment, Huang was to be paid an annual salary of $60,000.  *Id.* § V(2).  Under the Employment Contract, the Company also agreed to pay Huang 200,000 shares of ABAT stock as additional compensation.  *Id.* § V(1). Huang alleges that ABAT agreed to pay Huang or his designee an additional 100,000 shares in an addendum to the Contract, also executed on August 30, 2008.  Compl., ¶ 9 & Ex. C.

Huang's contract claim turns on when ABAT was obligated to deliver these 300,000 shares.  Huang claims that even though the Employment Contract appointed him to a five-year term, ABAT was obligated to pay him or his designee all 300,000 shares "by no later than September 30, 2008," a mere one month after Huang's employment began.  Compl., ¶¶ 8-9. ABAT construes the contract more sensibly, to require that the shares were to be paid to Huang over the course of the five-year term of Huang's employment.  Fu Decl., ¶ 12.  Accordingly, in

January 2009, approximately 5 months after Huang's employment began, ABAT paid Huang

60,000 shares — representing one-fifth of the shares Huang was due to be paid over the term of

his employment.  *Id.*; *see also* Compl., ¶ 12.

The parties' contractual dispute therefore centers around differing translations of a

Chinese Employment Contract.  Huang's translation renders the key provision thusly:  "Donate

200,000 stock shares of the American ABAT when this contract takes effect, Party A shall finish

the transaction on November 30, 2008."  Compl., Ex. C, at § V(1).  The relevant provision in fact

provides:  "The disbursement of 200,000 shares of ABAT of the United States stock will take

place during the time after the effective date of the contract, which Party A is responsible for

completing no later than *November 30, 2008*."  McPherson Dec., Ex. A, at § V(1).  In other

words, the reference to November 30, 2008 does *not* set forth the date on which the shares must

be transferred to Huang; it merely provides that the effective date of the Contract will be no later

than November 30, 2008.  In ABAT's view, then, the Contract provides that Huang will receive

shares of stock over a five-year period, consistent with ABAT's (and virtually every other

company's) standard practice in granting shares as part of an employment compensation plan.

### C.    ABAT's Potential Defenses to Plaintiff's Contract Claim.

Because ABAT is filing this motion to dismiss, it has not yet filed an Answer to

plaintiff's Complaint.  To enable the Court to consider why the issues raised in this litigation

should be resolved in a Chinese forum, however, ABAT offers the following summary of some

(but not necessarily all) of the defenses it might raise to Huang's core contract claim.

First, Huang has materially breached the Employment Contract by misrepresenting the

status of patents transferred to ABAT under the Contract.  Huang's Complaint alleges that he

licensed all of his patents to ABAT through the Employment Contract.  *See* Compl., ¶ 8(a).  In

the Contract, Huang personally guaranteed the validity of these patents throughout his five-year

employment period.  *See* McPherson Dec., Ex. A, at § IV; Fu Decl., ¶ 19.  Yet, while the

Complaint claims that "Huang holds 7 U.S. patents and 20 Chinese patents" and that he is

"preparing 3 potential patents for submission," Compl., ¶ 6, and while the Employment Contract

refers to 30 patents, *see* McPherson Decl., Ex. A, at § IV, Huang only holds *one* legitimate U.S.

patent, and a small fraction of his claimed Chinese patents.  *See* Fu Decl., ¶ 19.  By failing to

preserve these patents from legal challenges, Huang breached the Employment Contract.

Second, Huang has materially breached the Employment Contract by failing to perform

his job duties.  Beginning in late summer 2009, shortly after Huang demanded immediate

payment of the remaining 240,000 shares, Huang no longer reported to work regularly.  Fu Decl.,

¶ 16.  Worse, Huang repeatedly ignored direct orders of the Company's CEO — orders that fell

well within Huang's duties under the Employment Contract.  *Id.*, ¶¶ 17-18.  In October, ABAT

notified Huang that it was encountering major production problems at its factory in Harbin, and

asked Huang to travel to the factory to resolve the major technical problems there.  *Id.*, ¶ 17.

ABAT also requested that he examine and approve the acquisition of new equipment as well as

the renovation of old equipment at the Harbin factory.  *Id.*  Huang did not respond to these

requests, and did not take any action to fulfill his job duties.  *Id.*

After providing Huang with two formal notices asking him to perform his job duties, and

after Huang refused to do so — or even to respond to the Company's notices — the Company

was left with no choice but to terminate Huang's employment.  Fu Decl., ¶ 18.  ABAT sent

Huang a letter terminating his employment on November 13, 2009.  *Id.*

### D.    Plaintiff's Ancillary Claims.

Plaintiff attempts to spin the events of October and November 2009 into ancillary tort and

quasi-contractual claims.  He alleges that he received death threats beginning in October, but the

Complaint is very careful not to allege that anyone affiliated with ABAT was responsible for the

threats.  Compl., ¶ 15.  Huang alleges only that the threats began after he initiated the lawsuit and ended after his counsel notified us of the threats.  *Id*.  He also alleges that he received a Notice from the Company on October 25, 2009.  *Id*., ¶ 16.  Huang claims that this Notice "fir[ed] [him] as ABAT's CTO," *id*., although it is clear from the text of the Notice attached to the Complaint that it does no such thing.  *See Id*., Ex. F.  The Notice merely directs Huang to travel to the "Harbin production facility . . . and attend the project of equipment improvement for Buildings A and B," *id*., a task that falls within the job duties explicitly defined in Huang's Employment Contract, *see* McPherson Decl., Ex. A at § 9.  (As detailed in Fu's Declaration, only after Huang refused to comply with both this notice and a second notice was he terminated.)

Based on those allegations, Huang purports to assert claims for intentional infliction of emotional distress, retaliation, breach of the implied covenant of good faith and fair dealing, and prima facie tort.  *See* Compl., ¶¶ 20-27.

## ARGUMENT

### I.     THE COURT SHOULD DISMISS THIS CASE ON *FORUM NON CONVENIENS* GROUNDS.

As the Supreme Court recently reaffirmed, "[a] federal court has discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'"  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429-36 (2007) (unanimously upholding *forum non conveniens* dismissal because Chinese courts were "the more convenient forum" for resolving events occurring in China).

In conducting a *forum non conveniens* analysis, courts initially determine what deference, if any, is due to the plaintiff's choice of forum, and whether an adequate alternative forum exists. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55 (1981); *Wilson v. Echkaus*, Nos. 08-3751-cv (L), 08-4116-cv (con), 2009 U.S. App. LEXIS 21416, at *2-3 (2d Cir. Sept. 30, 2009); *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 70, 73 (2d Cir. 2001) (en banc).  If an alternative forum exists, the next step is to weigh the relevant private interest factors (the convenience of the litigants) and public interest factors (*e.g.*, administrative difficulties, local interest in deciding local matters) affecting the convenience of the forum.  *Piper Aircraft*, 454 U.S. at 257-61; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Iragorri*, 274 F.3d at 73-74.

As detailed below, plaintiff's choice of forum is entitled to no deference for any number of reasons, not the least of which is that plaintiff is not a resident of New York and has no connection to this forum.  There is no doubt that China offers plaintiff an alternative forum to hear his claims.  And because all of the private and public interest factors favor proceeding in China, this matter is "best left for determination by the Chinese courts."  *Sinochem*, 549 U.S. at 435-36.

### A.   Plaintiff's Choice Of Forum Is Entitled To No Deference.

The first level of inquiry in any *forum non conveniens* analysis is the deference to be given to plaintiff's choice of forum.  *Iragorri,* 274 F.3d at 70; *see also Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003).  Here, plaintiff's choice of forum is entitled to no deference for the following reasons.

### 1.   Plaintiff Has No Connection To This Forum.

The purpose of the *forum non conveniens* inquiry is to ensure that the trial is convenient. *Wilson*, 2009 U.S. App. LEXIS 21416, at *4 (explaining that the "degree of deference accorded to plaintiff's choice of forum moves on a 'sliding scale' correlated with 'degree of

convenience'") (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005)).  Courts therefore give little deference to a forum choice when the plaintiff does not reside in or near that forum; such a forum is not convenient.  *Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's, London*, No. 08 Civ. 2225 (JGK), 2009 U.S. Dist. LEXIS 20824, at *12 (S.D.N.Y. Mar. 16, 2009) ("American nationals residing abroad are given little deference with respect to their choice of forum in the United States.").

Huang has no connection to New York.  His primary residence is Shenzhen, in southern China.  Compl., ¶¶ 1, 6, 16.  Huang's choice of a *New York* forum is therefore entitled to diminished deference, even if he happens to own property in *California*.  *See, e.g.*, *Seales v. Panamanian Aviation Co.*, No. 07-CV-2901(CPS)(CLP), 2009 U.S. Dist. LEXIS 11855, at *35 (E.D.N.Y. Feb. 18, 2009) ("diminished" deference to choice of forum when plaintiff was living abroad at time action was commenced).

### 2. Having Chosen To Work For ABAT In China, Huang Should Expect To Litigate There.

Huang chose to work for a Chinese company in China:  he negotiated and accepted an Employment Contract requiring him to work for at least five years in Shenzhen, China.  Compl., ¶ 8.  Having chosen to work in China for a Chinese company, Huang could have foreseen the need to litigate there.  "Less deference is given to plaintiff's choice [of forum] when . . . suit in the international forum was foreseeable in light of the transaction."  *ICC Indus. v. Isr. Disc. Bank, Ltd.*, 170 F. App'x 766, 767-68 (2d. Cir. 2006).

### 3. Plaintiff's Choice Of Forum Is Based On Nothing More Than Forum Shopping.

The Second Circuit rejects efforts, such as plaintiff's here, to shop for a forum in which plaintiff might receive more favorable treatment or a larger damage award from a U.S. jury:

> "[T]he more it appears that the plaintiff's choice of a U.S. forum was
> motivated by forum-shopping reasons — such as attempts to win a tactical
> advantage resulting from . . . the habitual generosity of juries in the United
> States or in the forum district, the plaintiff's popularity or the defendant's
> unpopularity in the region, or the inconvenience and expense to the defendant
> resulting from litigation in that forum — the less deference the plaintiff's
> choice commands and, consequently, the easier it becomes for the defendant
> to succeed on a *forum non conveniens* motion."

*Iragorri,* 274 F.3d at 72.  Courts should therefore carefully "consider the degree to which the

plaintiff or the lawsuit has a bona fide connection to the United States and to the forum of

choice, and the degree to which considerations of convenience favor [a] lawsuit in the United

States."  *Turedi v. Coca-Cola Co.*, No. 06-5464, 2009 U.S. App. LEXIS 14794, at *4-5 (2d Cir.

July 7, 2009).  When a foreign-based plaintiff chooses a U.S. forum, it "is more likely that

forum-shopping for a higher damage award or for some other litigation advantage was the

motivation for plaintiff's selection."  *Pollux Holding Ltd.,* 329 F.3d at 71.

Based on the parties' contacts with China — and complete lack of any connection with

this forum — it is all too obvious that forum shopping is precisely what has occurred here.

Plaintiff lives and works in southern China.  Compl., ¶¶ 1, 6, 16.  ABAT is located in China.  Fu

Decl., ¶¶ 3, 7.  The agreements between Huang were drafted in China (in Chinese), and were

executed there.  *Id.*, ¶¶ 10-11.  And Huang's work for ABAT was performed in China.  *Id.*, ¶ 14.

Thus, Huang did not file suit in the United States because the events occurred here (they did not),

because the witnesses are here (they are not), because the documents are here (they are not),

because the documents are in English (they are not), because U.S. law is implicated (it is not), or

because the United States has an important interest in resolving a Chinese employment dispute

(it does not).

One can only presume why Huang *did* choose to sue here.  He could be attempting to

capitalize on China's current unpopularity within the U.S.  *See, e.g., Iragorri,* 274 F.3d at 72

(noting that "the defendant's unpopularity in the region" is a strong signal that improper motivations lay behind plaintiff's forum choice); Lydia Saad, *China Down, France Up in Americans' Ratings*, Gallup (Mar. 3, 2008), http://www.gallup.com/poll/104719/china-down-france-americans-ratings.aspx.  Or Huang could be hoping to take advantage of "the habitual generosity of juries in the United States."  *Iragorri,* 274 F.3d at 72.

Either of these potential reasons for Huang's choice would be illegitimate, and eliminates any deference due to his choice.  As the Second Circuit has repeatedly made clear, this Court should not defer to plaintiff's choice of forum when the choice was based not on convenience but rather *in*convenience.  *Turedi*, 2009 U.S. App. LEXIS 14794, at *4-5; *Iragorri*, 274 F.3d at 72.

### B.   China Offers Plaintiff An Adequate Alternative Forum to Consider His Claim.

There is no question that China is an available and adequate alternative forum.  "A forum in which defendants are amenable to service of process and which permits litigation of the dispute is generally adequate."  *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009) (citing *Norex Petroleum*, 416 F.3d at 157).

As detailed in the accompanying Declaration Of Xianyun Li In Support Of Defendant Advanced Battery Technologies, Inc.'s Motion To Dismiss ("Li Decl."), dated December 7, 2009, China offers such a forum.  Huang could sue ABAT in the Basic People's Court in either Shenzhen, where the Employment Contract was performed and the alleged conduct forming the basis of Huang's tort claims occurred, or Harbin, where ABAT is domiciled.  Li Decl., ¶¶ 28-29.  Either Court would have jurisdiction to consider Huang's tort and contract claims.  *Id*, ¶¶ 30-33.  Huang's ability to sue ABAT for breach of contract and tort claims in a Chinese court satisfies the requirement that the alternative forum permit litigation of the dispute.  *Abdullahi*, 562 F.3d at 189; *Norex Petroleum*, 416 F.3d at 157.

To eliminate any doubt, moreover, ABAT has agreed to submit to a Chinese court's jurisdiction as a condition of a dismissal of this case, and to toll any applicable statute of limitations for a period of 120 days while Chinese suits are instituted.  Fu Decl., ¶ 24.  A defendant's consent to the jurisdiction of another forum satisfies the requirement that defendants be amenable to service of process in the other forum.  *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir. 1991); *see also Blanco v. Banco Indus. de Venezuela S.A.*, 997 F.2d 974, 984 (2d Cir. 1993).

### C.   The Private And Public Interest Factors Favor Dismissal.

The next step in a *forum non conveniens* analysis requires the Court to balance both the private interests of the litigants and the public interests of the forum.  *Piper Aircraft*, 454 U.S. at 257; *Iragorri*, 274 F.3d at 73-74.  Here, both the private and public interests point overwhelmingly to dismissal.

### 1.   The Private Interest Factors Strongly Favor Dismissal.

The relevant private interest factors relate primarily to the convenience of the litigants.  They include:  (1) ease of access to evidence; (2) the cost for witnesses to attend trial; (3) the availability of compulsory process; and (4) other factors that might shorten trial or make it less expensive.  *Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998); *see also Gulf Oil*, 330 U.S. at 508; *ICC Indus.*, 170 F. App'x at 768; *Iragorri*, 274 F.3d at 73-74.

### a.   Any Relevant Evidence Is Located In China.

Huang's claims are inextricably tied to conduct that occurred exclusively in China.  They are based on a Contract executed in China and in Chinese.  Fu Decl., ¶ 11.  The Contract was negotiated in China.  *Id*.  The Contract called for Huang's employment at ABAT, in China.  *Id*., ¶ 14.  Huang's work — or lack thereof — took place in China.  *Id*.  Most of the patents whose validity he guaranteed are Chinese patents.  Compl., ¶ 6.  Any discussions between Huang and

the Company concerning his claim — or the Company's assertion that Huang has breached the contract in a variety of ways — necessarily occurred in China.  Fu Decl., ¶ 13.  And the Notice upon which Huang bases his tort claims was sent in China.  *Id.*, ¶¶ 17-18.

Not surprisingly, then, all of the evidence in this case will be found in China.  This includes the relevant agreements and drafts thereof; email and other correspondence between the parties; evidence of Huang's work attendance and performance; and evidence concerning the patents of which Huang purported to guarantee the validity.  Fu Decl., ¶¶ 10-11, 23.

That all of the relevant transactions and conduct occurred in China strongly supports *forum non conveniens* dismissal.  *See, e.g.*, *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 526 (S.D.N.Y. 2006), *aff'd*, 2009 U.S. App. LEXIS 14794 (*forum non conveniens* dismissal where the events central to the action "all occurred in Turkey").  Indeed, courts have dismissed breach-of-contract lawsuits on *forum non conveniens* grounds, despite the presence of at least some conduct or relationship with the forum court.  *See, e.g.*, *Dabbous v. Am. Express Co.*, No. 06 Civ. 11345 (DAB), 2009 U.S. Dist. LEXIS 42741 (S.D.N.Y. May 8, 2009) (*forum non conveniens* dismissal despite two defendants living in New York and some important evidence in New York).  Here, Huang cannot even claim that some relevant conduct or transactions occurred here.  Huang's Complaint makes no allegation that anyone at ABAT took any action outside of China that is in any way relevant to this lawsuit.  This is, therefore, a textbook case for dismissal on *forum non conveniens* grounds.

### b. This Court May Not Be Able To Obtain The Testimony Of Critical Witnesses.

The Supreme Court has recognized the importance of choosing a forum in which unwilling witnesses can be compelled to appear and testify.  *Gulf Oil*, 330 U.S. at 511.  Here, while it is too early to determine who might serve as witnesses and whether they could be

compelled to appear and testify in New York, there is a real risk that critical witnesses might be beyond the reach of compulsory process to compel their attendance or the production of documents in their control. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). Since all of the alleged conduct and transactions occurred in China, there may be former co-workers and employees, third-party witnesses, or others who have relevant knowledge but who reside in China, beyond this Court's subpoena power.

### c. Trial Could Occur Much More Expeditiously in China.

Any trial in China would be far easier, more expeditious, and less expensive than a trial in New York, if for no other reason than the absence of any language barriers. Trial in this Court would require extensive translation of virtually every document relevant to the allegations, significantly slowing trial preparation and the trial itself. *See Flores v. S. Peru Copper Corp.*, 253 F. Supp. 2d 510, 541 (S.D.N.Y. 2002) (dismissing case in which all witnesses spoke only Spanish: "If this case were presented to a jury in this Court, the translation requirements alone, of testimony and documents, would double the length of the trial."), *aff'd*, 414 F.3d 233 (2d Cir. 2003). To avoid these delays, the Court should dismiss this case on *forum non conveniens* grounds, in favor of a Chinese proceeding. *See id*.

### d. ABAT's Small New York Office Bears No Relationship To The Dispute.

ABAT's only theoretical connection to this forum is its small New York office. But this office had no connection to Huang or his work. ABAT's executive headquarters are located in Heilongjiang Province in China. Fu Decl., ¶ 3. Its factories — where Huang worked — are also in China. *Id*., ¶ 7. The Company's New York office exists for investor relations purposes only. *Id*., ¶ 9. No documents in the New York office are relevant to Huang's claim; no one in the New York office has any knowledge relevant to Huang's claim; and no part of the negotiation,

performance, or breach of Huang's Employment Contract took place in the New York office. *Id.*, ¶ 15.

Even when defendants have offices or headquarters in the U.S., moreover, this is not a significant factor favoring a U.S. forum. *Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ. 2084, 2003 U.S. Dist. LEXIS 1424, at *85-86 (S.D.N.Y. Feb. 3, 2003) (collecting cases and summarizing: "The Location of Defendants' Offices in New York Is Not a Significant Factor"). Where a defendant has some connection to the forum, such as an office there, the key question is whether "plaintiff and the case possess *bona fide* connections to, and convenience factors favor, that forum." *Pollux Holding*, 329 F.3d at 74.

Here, there are no such connections. ABAT has a mere office in New York for investor relations purposes. That office has absolutely no connection to Huang, or the Employment Contract at issue. As such, *forum non conveniens* dismissal is appropriate here, despite the Company's minimal presence in the forum. *See Pollux Holding*, 329 F.3d at 71; *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987); *Varnelo*, 2003 U.S. Dist. LEXIS 1424, at *85-86 (each dismissed for *forum non conveniens* despite New York headquarters).

     **e.**  **Because The Relevant Evidence Is In Chinese,**
        **Difficulties In Translation Favor Dismissal.**

As the Second Circuit has held, that a majority of documentary evidence and trial or deposition testimony will be in a foreign language "militates strongly in favor" of the foreign forum. *Blanco*, 997 F.2d at 982-83; *see also In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 500 (2d Cir. 2002) (where pertinent documents are in Ukrainian, conducting the trial in Ukraine would be "easy, expeditious and inexpensive" compared to New York).

Here, all of the important documents are located in China and are in Chinese.  Fu Decl., ¶¶ 10-11, 23.  Similarly, the majority of the testimony will come from PRC citizens who speak Chinese as their first or only language.  *Id.*, ¶¶ 2, 8.  In order for these cases to proceed in the United States, all of the Chinese documents and testimony will need to be translated from Chinese into English.

This translation process will not only be time-consuming and expensive; the sheer quantity of translations will lead to serious errors and misinterpretations.  Indeed, plaintiff's own Complaint hints of the inaccuracies to come.  Although the Complaint attaches just eight pages of Chinese documents, plaintiff's translation of those pages already contains serious errors.  To list just a few:

- Part II of the original Employment Contract states that it will continue until August 11, 2013.  Plaintiff's "translation" of this contract changes August 11 to August 31.

- Plaintiff's "translation" of the Contract omits two key clauses in the Employment Contract.  Part III of the original Chinese-language Employment Contract contains a list of nine job duties that Huang must perform.  These include "Responsible for the technical training of technical personnel" (§ III(8)) and "Responsible for examination and approval of work pertaining to the acquisition of new equipment and the renovation of old equipment" (§ III(9)).  Both clauses vanish from plaintiff's "translation" of the Employment Contract.

- Huang's Complaint is based on ABAT's alleged failure to pay Huang the entire five-year package of stocks at the beginning of the contract period.  *See* Compl., ¶¶ 8, 11.  Huang translates the key provision as:  "Donate 200,000 stock shares of

the American ABAT when this contract takes effect, Party A shall finish the

transaction on November 30, 2008."  Even putting aside its grammatical

problems, this translation cannot be correct.  "Donate" cannot be the correct

translation of a verb describing ABAT's payment of shares to Huang in

consideration of his employment services.

These differences in translation — and there will surely be more, as the parties would be

forced to rely on translations of other documents produced in discovery or introduced at trial —

caution against proceeding in this forum.  As Judge Holwell recently noted:  "[A]s

communication with the Court over mistranslation has revealed, the language barrier surely

factors into the analysis here.  Correction of one erroneous translation has already fundamentally

changed plaintiff's position . . . the vast majority of all other documentary evidence . . . will

likewise be written in [a foreign language]."  *Overseas Media, Inc. v. Skvortsov*, 441 F. Supp. 2d

610, 618-19 (S.D.N.Y. 2006) (finding *forum non conveniens* dismissal appropriate), *aff'd*, 377

F. App'x 92 (2d Cir. 2008).  Here, again, the need for extensive translation "militates strongly"

in favor of a Chinese forum.  *See Blanco*, 997 F.2d at 982-83.

## 2.     The Public Interest Factors Strongly Favor Dismissal.

The public interest factors to be considered include:  administrative difficulties flowing

from court congestion; the unfairness of burdening citizens in an unrelated forum with jury duty;

the local interest in having localized controversies decided at home; the interest in having a

diversity case tried in a forum familiar with the law that governs the action; and the avoidance of

unnecessary analysis of foreign law.  *Gulf Oil*, 330 U.S. at 508-09; *see also Turedi*, 2009 U.S.

App. LEXIS 14794, at *8; *Iragorri*, 274 F.3d at 74; *Alfadda*, 159 F.3d at 46.  As with the private

interest factors, all of these public interest factors also weigh heavily in favor of dismissal.

> ### a.  China Has The Greatest Interest In The Outcome Of This Controversy.

If any jurisdiction has an interest in the outcome of this dispute, it is China, not the Southern District of New York.  China alone has an interest in an employment dispute with a Chinese company to perform work in China.  And as the Supreme Court recently put it, matters related to China are "best left for determination by the Chinese courts."  *Sinochem*, 549 U.S. at 435-36.

*Dabbous v. American Express Co.*, 2009 U.S. Dist. LEXIS 42741, at *22, confirms that only China has an interest in this dispute.  In *Dabbous*, the court recognized that local courts have a superior interest in resolving local employment disputes.  There, the plaintiff executive claimed that the defendant had breached an employment contract.  Although the defendant was a New York corporation, and although the plaintiff alleged that the defendant hatched part of its scheme in New York, the court concluded that New York's interest in the dispute was "minimal."  *Id.*  Moreover, New York's "minimal" interest was "substantially outweighed" by Egypt's strong interest in "resolving events whose effects were felt almost entirely within Egypt."  *Id.*

The same logic applies with greater force here, because ABAT's connection to New York is far more tenuous than that of the defendant in *Dabbous*.  ABAT is headquartered in China.  Fu Decl., ¶ 3.  Its small New York office primarily handles investor relations.  *Id.*, ¶ 9.  Fu negotiated and signed the Employment Contract with Huang in China.  *Id.*, ¶ 11.  No aspect of the Employment Contract's negotiation, implementation, or Huang's resulting employment occurred in New York.  *Id.*, ¶ 15.  If New York's interest was "minimal" in *Dabbous*, then New York's interest in this dispute is even less so.

By contrast, China's interest in this litigation is substantial.  The Employment Contract governed work in China, with effects felt entirely within China.  Fu Decl., ¶ 14.  ABAT's headquarters, production facilities, and employees are located in China.  *Id.*, ¶¶ 3, 7-8.  Simply put, China is the proper place to resolve the interpretation of a Chinese Employment Contract involving work performed in China for a Chinese company.  *See*, *e.g.*, *Sinochem*, 549 U.S. at 435-36; *Dabbous*, 2009 U.S. Dist. LEXIS 42741, at *22.

### b. There Is No Reason To Burden A New York Court And Jury With This Dispute.

For similar reasons, retaining this action would impose a considerable and unwarranted burden on the citizens of this jurisdiction, whose tax dollars would support the expense of this case and whose time would be devoted to sitting as jurors.  To try this case would force New York jurors to decipher Chinese legal documents, parse testimony in translation, and ponder the demeanor of witnesses who are speaking a language the jury doesn't understand.  Given New York's minimal interest in this litigation, there is no reason to impose such a burden on this forum or its citizens.  *See Sinochem*, 549 U.S. at 429; *Piper Aircraft*, 454 U.S. at 260; *Gulf Oil*, 330 U.S. at 508-09.

### c. This Court Should Not Become Embroiled In The Application Of Foreign Law.

One of the relevant public interest factors is the desire to have a case heard in a forum at home with the law governing the case.  *Gulf Oil*, 330 U.S. at 509.  Additional public interest factors include the remoteness of the forum from the place of the event, and the need to rely upon and interpret foreign law.  *Piper Aircraft*, 454 U.S. at 241 n.6; *Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l, S.A.*, 712 F.2d 11, 14 (2d Cir. 1983); *see also Overseas Media, Inc.*, 277 F. App'x at 97 ("because the case presents issues of Russian law, there is a Russian interest in having the matter adjudicated in a Russian forum").  These factors, too, favor dismissal.

Although the Employment Contract does not have a choice of law provision, it is most likely governed by Chinese law.  Under New York choice of law rules,[1] in contract cases, the "center of gravity" analysis determines choice of law.  *Matter of Allstate Ins. (Stolarz)*, 81 N.Y.2d 219, 226, 597 N.Y.S.2d 904, 907 (1993); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 583 (2d Cir. 2006) (describing New York rule).  Applying this center of gravity analysis requires courts to consider "the place of contracting, negotiation, and performance; the location of the subject matter of the contract; and the domicile of the contracting parties."  *Matter of Allstate*, 81 N.Y.2d at 227, 597 N.Y.S.2d at 908 (citing *Restatement (Second) of Conflict of Laws*, § 188(2) (1971)).

These factors suggest that Chinese law will govern the Employment Contract.  The parties contracted in China, negotiated in China, and Huang began performance in China.  Fu Decl., ¶¶ 10-11, 14.  The subject matter of the contract was employment in China, with job duties directly tied to China — oversight of employees, production lines, and equipment, all located solely in China.  *Id.*, ¶¶ 7-8.  Huang and Fu both lived in China at the time of the negotiation.  *Id.*, ¶ 2.  ABAT is incorporated in Delaware, but with headquarters in northern China.  *Id.*, ¶ 3.

In addition, one of ABAT's defenses to Huang's claim is his own material breach of the Employment Contract, due to his failure to guarantee the validity of the patents he claimed to own, the vast majority of which are Chinese patents.  Fu Decl., ¶ 19.  This litigation will therefore require the interpretation of PRC patent law to determine whether Huang has breached the contractual requirement that his patents remain valid throughout employment.

---

[1] A federal court exercising diversity jurisdiction applies the choice of law analysis of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003).

Likewise, Chinese law will govern plaintiff's ancillary tort claims.  Under New York choice of law analysis, the location of the tort and the parties' domiciles determine the governing law.  *See, e.g., Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 195, 197, 491 N.Y.S.2d 90, 93, 95 (1985); *AroChem Int'l v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992).  Here, ABAT, its executives, and Huang each have their domicile in China.  *See* Fu Decl., ¶¶ 2, 6, 8.  Moreover, all of the challenged conduct acts occurred in China.  Huang's employment occurred in China.  *Id.*, ¶ 14. The alleged phone call between Fu and Huang took place in China.  *Id.*, ¶ 20.  ABAT's notices and termination letter were sent to Huang from Harbin, China to Huang's home in Shenzhen. *Id.*, ¶ 17.  The text messages Huang allegedly received were transmitted through China-based phones and through the Chinese telecommunications system.  Compl., Ex. E.

The need for the Court to interpret and apply Chinese law favors dismissal on *forum non conveniens* grounds.  The Second Circuit interprets the Supreme Court's *Gulf Oil* decision to call for an action to be dismissed if the court may be required to "untangle problems in conflict of laws, and in law foreign to itself."  *Overseas Nat'l Airways,* 712 F.2d at 14 (quoting *Gulf Oil,* 330 U.S. at 509); *see also Blanco,* 997 F.2d at 983 (district court may conclude that questions of a foreign country's procedural and substantive law are better addressed by that foreign country); *Calavo Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 967 (2d Cir. 1980) (likelihood of foreign law governing action supports conclusion that suit should be prosecuted in foreign jurisdiction).

\* \* \*

For all of these reasons, this case simply does not belong here.  The Court should dismiss the case on *forum non convenience* grounds, in deference to a Chinese forum.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS PLAINTIFF'S TORT AND IMPLIED CONTRACT CLAIMS FOR FAILURE TO STATE A CLAIM FOR RELIEF.

In the event the Court determines that this litigation can proceed here, the Court should dismiss plaintiff's second through fifth claims.  Those claims — for intentional infliction of emotional distress, retaliation, breach of implied contractual covenant of good faith, and prima facie tort — fail to state a claim for relief, under either Chinese or New York law.

### A.   Huang's Tort Claims Fail Under Chinese Law.

As noted above, Chinese law should apply to Huang's tort claims.  *See supra*, at 21.  Li's Declaration explains that Chinese law does not differentiate between the tort claims Huang has asserted.  Instead, there is only one general tort claim under Chinese law, the elements of which are an infringing act, injury, and causation.  *See* Li Decl., ¶ 36.

Huang's Complaint fails to allege these elements.  First, the Complaint fails to identify any "infringing act" by ABAT.  The Complaint does not even allege that ABAT or anyone at ABAT was responsible for the death threats Huang allegedly received.  *See* Compl., ¶ 15.  That leaves only the Notice Huang received as a potential basis of any tort claim.  *See id.* ¶ 16.  But the Notice merely required Huang to travel to an ABAT facility to perform his job duties — an act that was clearly within ABAT's contractual rights — and therefore cannot be considered an infringing act under Chinese law.  Li Decl., ¶ 38.  In addition, Huang's Complaint does nothing to tie ABAT's conduct to Huang's alleged injuries.  *Id.*, ¶¶ 38-39.  His tort claims, as governed by Chinese law, should therefore be dismissed.

### B.   Huang's Tort and Implied Contract Claims Fail Under New York Law.

Even if the Court found New York law to apply here, it is clear that Huang's claims are just as deficient under New York law.

First, Huang's intentional infliction of emotional distress ("IIED") claim fails to allege the predicate of such a claim — conduct that is "so outrageous and extreme 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Campoverde v. Sony Pictures Entm't*, No. 01 Civ. 7775, 2002 WL 31163804, at *11 (S.D.N.Y. Sept. 30, 2002) (citation omitted).

Huang's IIED claim is premised upon the "actions described in Paragraphs 15 and 16." Compl., ¶ 20.  But neither Paragraph — nor any other in the Complaint — actually alleges that ABAT or anyone at ABAT was responsible for the death threats Huang allegedly received.  *See* Compl., ¶ 15; *see also Smukler v. 12 Lofts Realty, Inc.*, 156 A.D.2d 161, 163, 548 N.Y.S.2d 437, 439 (1st Dep't 1989) (noting that plaintiff's Complaint does not "allege that [defendant] was responsible for an anonymous note" threatening plaintiff, and cannot be a basis for a claim of intentional infliction of emotional distress).  At most, then, Huang's IIED claim is premised on his allegation of some vague, unidentified reference to ABAT's CEO "threaten[ing] Huang about bringing any litigation," Compl., ¶ 15, and his allegation that he received an employment Notice directing him to perform his job duties at an ABAT factory, *id*. ¶ 16 & Ex. F.  Neither allegation constitutes outrageous and extreme conduct that might support an IIED claim.  *See* Lee S. Kreindler et al., 14 N.Y. Prac., New York Law of Torts § 1:38 ("It is well established that mere threats . . . no matter how upsetting, are insufficient to constitute the tort of intentional infliction of emotional distress."); *Alam v. HSBC Bank USA, N.A.,* No. 07 Civ. 3540, 2009 U.S. Dist. LEXIS 89438, at *34-35 (S.D.N.Y. Aug. 13, 2009) (citing this language); *Smukler*, 156 A.D.2d at 163, 548 N.Y.S.2d at 439 (alleged "threats" by defendant, including that he would make the family's life "miserable" and also prevent them from selling their home "were neither extreme nor outrageous" and do not reach the level of intentional infliction of emotional distress);

*Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724, 2009 U.S. Dist. LEXIS 30431, at \*80 (S.D.N.Y. Mar. 31, 2009) (telling Plaintiff she was fired and terminating her employment is not sufficiently extreme to state an emotional distress claim); *Murphy v. Am. Home Prods.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983) (the allegation that defendant company fired a 30-year employee one day before pension vested in retaliation for reporting a $50 million accounting fraud "fall[s] far short of [the] strict standard" for intentional infliction of emotional distress).

Second, plaintiff's retaliation claim likewise fails. The Complaint offers no hint as to what conduct forms the basis of this claim — it merely refers to ABAT's unspecified "actions," ¶ 22 — nor does it indicate what the legal claim encompassed by the label "retaliation" is meant to be. Even assuming that plaintiff seeks to bring a retaliation claim under Title VII, any such claim would fail, because plaintiff has not even begun to allege the elements of such a claim. To state a *prima facie* claim of retaliatory termination, plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discriminatory intent. *See*, *e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 172-73 (2d Cir. 2005) (applying *McDonnell Douglas* to Title VII retaliation claims); *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004); *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). Among other pleading defects, plaintiff does not allege any fact to indicate that he is a member of some protected class.

Third, plaintiff's good faith and fair dealing claim fails for two reasons. It is redundant of the contract claim. *See*, *e.g.*, *Price v. Cushman & Wakefield, Inc*., No. 08 Civ. 8900, 2009 WL

3075599, at *4 (S.D.N.Y. Sept. 30, 2009) (dismissing good faith and fair dealing claim as redundant of contract claim).  And in any event, it is premised on ABAT's sending of an employment Notice directing Huang to perform his job duties — conduct in which ABAT was contractually permitted to engage.  *See, e.g.*, *Murphy.*, 58 N.Y.2d at 304-05, 461 N.Y.S.2d at 237.

Finally, plaintiff's prima facie tort claim would fail under New York law, as well.  Prima facie tort is not a "'catch-all' alternative for every cause of action which cannot stand on its legs."  *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 720 (1983) (citation omitted).  "The elements of such a cause of action . . . are (1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful."  *Id*. at 332, 464 N.Y.S.2d at 720  Here again, plaintiff has not alleged any of these elements.

## CONCLUSION

This case belongs in China, where all of the relevant transactions and conduct occurred, where all of the witnesses reside (including plaintiff), and where all of the relevant evidence can be found.  ABAT therefore respectfully requests that the Court dismiss this action on grounds of *forum non conveniens*.

In the alternative, and only in the event the Court rules that this Court is an appropriate forum for the dispute, the Court should dismiss plaintiff's second through fifth claims, for failure to state a claim for relief.

Dated: New York, New York     MORRISON & FOERSTER LLP
       December 7, 2009


By: ___s/Mark David McPherson_____
    Mark David McPherson

1290 Avenue of the Americas
New York, New York 10104-0012
Telephone:  (212) 468-8000
mmcpherson@mofo.com

*Attorneys for Defendant*
Advanced Battery Technologies, Inc.