UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
    SUI-YANG HUANG,

                            Plaintiff,                      09 Civ. 8297 (HB)

       -against-

    ADVANCED BATTERY TECHNOLOGIES, INC.,

                          Defendant.
-------------------------------------------------------------------X

DECLARATION OF PLAINTIFF SUI-YANG HUANG
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND IN SUPPORT OF CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

      Sui-Yang Huang affirms under the penalties of perjury under the law of the United States of America ("United States") as follows:

    1.  I am plaintiff in the above-captioned action.   I submit this declaration in opposition to the motion of defendant Advanced Battery Technology, Inc. ("ABAT"), for an order either (a) dismissing this action on the grounds of *forum non conveniens*, or, in the alternative, (b) dismissing the tort and quasi-contract claims asserted in the First Amended Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. I also submit this declaration in support of my cross-motion pursuant to Federal Rule of Civil Procedure 56 for summary judgment on the First Claim of the Complaint.

CITIZENSHIP

    2.  This is a dispute between two United States citizens from different States.  In 1995, I came to the United States and worked at National Renewable Energy Laboratory in

Denver.  In 1996, I obtained a "green card" through the Outstanding Scientist Program. In 2002, I became a United States citizen.  Attached as Exhibit A is my Certificate of Naturalization, dated August 20, 2002.  A copy of my United States passport is attached as Exhibit B.  I have a home in the United States in San Francisco, California.  I pay income taxes in the United States. My W-2 from ABAT for the year 2008 is attached as Exhibit C.

3.  In his declaration in support of ABAT's motion, Zhiguo Fu ("Fu"), ABAT's CEO, tries to suggest that ABAT *really* is not a United States citizen. [In Paragraph 3 and 9 of Fu's Declaration, Fu states that ABAT's headquarter is in China, but not in New York. Similarly in the Memorandum of Law in Support of Defendant's Motion to Dismiss, Defendant introduces ABAT as "ABAT is a Chinese company, with its headquarter in Haerbin City.] That is not true. ***ABAT's own SEC filings demonstrate that ABAT is organized and existing under the laws of the State of Delaware, with its "principal executive offices" located at 15 W. 39th Street, 14th Floor, New York, NY 10018.*** Attached, for example, as Exhibit D is ABAT's 2008 Form 10-K filed with the United States Securities and Exchange Commission ("SEC")[1]. ABAT is listed on NASDAQ.

<u>THE EMPLOYMENT CONTRACT</u>

4.  ABAT develops, manufactures and distributes rechargeable Polymer Lithium-Ion ("PLI") batteries. Its products include rechargeable PLI batteries for electric automobiles, motorcycles, mine-use lamps, notebook computers, walkie-talkies and other electric devices.

---

[1] *Fu's Declaration is rife with contradictions. In Paragraph 1, for example, he states that "ABAT" is the abbreviation of Harbin Zhongqiang Energy Science and Technology Co. Ltd ("Zhongqiang"). Yet in Paragraph 5, Fu tells us that Zhongqiang is ABAT's subsidiary.*

5.  I have over 25 years of experience in chemical engineering, including over 21 years experience in the Chinese battery industry. Most recently, I was the founder and Chief Executive Officer of Luke Battery Corp. ("LBC"). My father, who financed the formation of LBC, was its sole shareholder.)  I hold a Ph.D. from the Universite de Bordeaux (France), and also am a professor in polymer materials and engineering at a major Chinese university.  I hold a large number patents, primarily relating to the design and manufacture of batteries.  I have authored over 30 studies, published in academic journals in the United States, Europe and Asia.

6.  In 2008, Fu approached me with a two-pronged proposal.  First, he offered *personally* to purchase LBC from my father.  Second, he asked me to become ABAT's Chief Technology Officer ("CTO").  After some negotiation, my father and I agreed.  On August 30, 2008, as agent for my father, I sold LBC to Fu, who subsequently changed LBC's name to Shenzhen Advanced Battery Technologies Co. ("SABAT").

7.  On the same day, I signed an employment contract with ABAT ("Employment Contract"), which is contained in two separate documents, one entitled "Employment Contract,' the other entitled "Memorandum."[2]  Pursuant to the first agreement, the parties agreed, among other things, to the following:

a. I became ABAT's CTO for a term of 5 years, from September 1, 2008 until August 31, 2013.  (Paragraph II.)

b. As such, I was responsible for research and product development and quality.  (Paragraph III.)  Quite intentionally, the agreement did not specify where

---

[2] Attached as Exhibit E is the agreement in original Chinese and in English translation.  The translation was made by Ms. Vicky Segal.  Ms. Segal, while at the United States Department of State, did Chinese language translation for President Bush and President Clinton, when they met with their Chinese counterparts.  ABAT's translation, attached to the Declaration of Mark David McPherson, one of ABAT's attorneys, curiously does not contain the Memorandum.

my work was to be performed.  The simple reality was that most of my work could be done from wherever I had internet access.

       c. ABAT agreed to pay me a salary of $60,000 per year for my work as CTO. In addition, ABAT agreed to give me 200,000 shares of ABAT within three months, *i.e.,* by no later November 30, 2008. (Paragraph V.)[3] The language granting me the stock is clear and unambiguous, as evidenced by the correspondence of the translations of Ms. Segal and ABAT's translator. Ms. Segal's translation of Paragraph V reads: "After this Contract has become effective – and on November 30, 2008 – Party A [ABAT] shall be responsible for completing a grant of 200,000 shares of ABAT." ABAT's translation reads: "The disbursement of 200,000 shares of ABAT of the United States stock will take place during the time after the effective date of the contract which Party A [ABAT] is responsible for completing no later than *November 30, 2008.* [Emphasis in <u>original</u>.] ***Thus, Fu's claim in paragraph 12 of his declaration that I was to get my shares <u>pro rata</u> over the five year term of the agreement (60,000 shares per year) is untrue.***

       d. Paragraph IV of the Employment Contract provides: "From the date of signature of this contract, no patent and no pending patent (30 in total) already belonging to Party B [me] may be transferred to, or used by, any third party. Party B hereby guarantees that during the term of the contract, no legal dispute pertaining to these patents and pending patents (30 in total) shall arise." (ABAT's translation is to the same effect.) ***Fu claims in paragraph 22 of his declaration***

---

[3] I was to be, and actually was, paid in United States Dollars from ABAT's New York Office. The share transferred to my designee and I were also from New York Office.

*that I made "false statements regarding various patent rights." However, he provides no details, and for that reason, this allegation should be given no weight.* In fact, there have been **no** claims made against any of my patents or patent applications, and I have **not** transferred any of my intellectual property or authorized anyone to use it.

   e. The Employment Contract does not contain a "choice of law" or "forum selection" provision. As a United States citizen entering into an employment contract with another United States citizen, it was my understanding and intention at this time that United States law would apply and United States court would resolve my disputes[4].

8. The second agreement signed by ABAT and me on August 30, 2008 (entitled "Memorandum"), is in the nature of an addendum to the first. In it, ABAT granted me the right to another 100,000 shares of ABAT, the owner of which I could (and did) designate. These shares were to be delivered by no later than September 30, 2008.

9. Upon hiring me, ABAT issued the following press release: "Advanced Battery Technologies, a company that manufactures rechargeable polymer lithium-ion batteries, named Dr. Suiyang Huang as their new Chief Technology officer today. Dr. Huang's responsibilities will include upgrading existing ABAT products and production processes, managing technology standards and production procedures, and developing new and better rechargeable battery products. Dr. Huang seems eminently qualified for the position. He has a PHD from Universite de Bordeaux, has published over 30 papers, and holds 7 US and 20 Chinese patents. As company CEO Zhiguo Fu said, "The appointment

---

[4] It should be noted that ABAT's termination of the Employment Contract refers to ABAT as "ABAT of the United States."

of Dr. Suiyang Huang to the Chief Technology Officer position fills an important and strategic leadership role in our company. Technology is our lifeblood in an industry where innovation drives competition and customer value. Dr. Suiyang Huang's record as a pioneer in the field is not only evident in China but worldwide. With his help, we will set the standards for China's EV industry." (A copy of the press release is attached as Exhibit F.) Events, however, did not work out as planned.

<u>ABAT'S BREACH OF CONTRACT</u>

13.    I began work as ABAT's CTO on September 1, 2008. In addition to the duties enumerated in the Employment Agreement, I continued to act, at Fu's request, as SABAT's CEO.

14. My designee received none of the promised shares by September 30, 2008, nor did I receive my shares by November 30, 2009. When I questioned him, Fu told me that it would take until the end of the year to make the transfers.

15. In early January 2009, ABAT delivered only 40,000 of the 200,000 promised shares to me and only 20,000 of the promised 100,000 shares to my designee.

16. Shortly thereafter, I demanded an explanation. Fu said that he had changed his mind and would not comply with the Employment Contract. He said he was afraid I would quit once I received my shares. Fu said he would give me and my designee 20% of our shares for each of five years (the duration of the Employment Contract). Fu also claimed this was an "American custom." Fu said that I should acquiesce because I am an American citizen. In July 2009, I asked Fu again for the remaining shares. Fu said that he knew he was violating our agreement, but that he would not give me the remaining

6

shares. He added that he was prepared to litigate the matter and had so advised his attorneys in New York. I told him that was unacceptable.

17.   In retaliation, Fu, in a memorandum dated August 4, 2009, removed me from the payroll of ABAT (allegedly due to an unspecified "job change," and began to pay me a reduced salary of $17,000 per year in Chinese currency from *SABAT*, which is owned by Fu personally. (A copy of the memorandum in the original Chinese and in English translation is attached hereto as Exhibit G.) Despite this, I continued with my work as ABAT's CTO, although I no longer continued in my unofficial capacity as SABAT's CEO. At *no* point in time was I ever notified that my work was unsatisfactory, as evidenced by the fact that the memoranda from Fu to me during the period make no such claim. Only now, in his declaration (paragraphs16–18 and 21), does Fu claim that at the end of the summer of 2009, I "stopped coming to work on time" and when I did, I "frequently would not work the entire day." That is utterly false. However, even if it were true, it happened after ABAT (Fu) – in retaliation for me asserting my rights – effectively fired me by wrongfully refusing to pay me my salary.[5]

18.   I continued to press Fu for the remainder of the shares, threatening litigation if ABAT did not give them to me.

<u>THE DEATH THREATS AND MY FORMAL TERMINATION</u>

19. This action was commenced on September 30, 2009. Early next morning, Fu made a phone call to me. He expressed his shock and unhappiness at this litigation. During this phone conversation, he hinted that my life was at risk. The very next day, I

---

[5] It is worth noting during the one year I worked as SABAT's interim CEO (at Mr. Fu's request), the value of the company increased from $1,000,000 (my father's sale price) to the point where Fu now is in the process of selling the company to ABAT for a reputed $10,000,000 – a 1,000% increase in value in slightly over one year.

received the following death threat as a text message on my cell phone: "If you don't want to die earlier, you must shut up. Otherwise, you shall die no matter where you are in the world." The day after that, I received another death threat: "You don't want to die? F**king you." Finally, on October 6, 2009, I was sent the following: "You don't want to die? Be careful that your whole family will be killed. If you don't believe, wait and see. F**king you." (Copies of the threats in the original Chinese and in English translation are attached hereto as Exhibit H.) I never had anything like this happen to me before. In my mind, while the threats were anonymous, their content and timing unmistakably pointed to ABAT. My attorneys immediately brought the threats to the attention of counsel for ABAT, and they stopped – at least for the moment.

20.     On October 25, 2009, I received a written "notice" from Fu, informing me that ABAT's Board of Director's had fired me as CTO, and unilaterally had given me the position of "Technical Engineer." Quite extraordinarily, it went on to ***order*** me to report for work on October 27, 2009, for work at an ABAT subsidiary located over 1,800 miles from my home, leaving my wife and infant child unprotected. (A copy of the notice in the original Chinese and in English translation is attached hereto as Exhibit I.) I did not comply with Fu's unwarranted demand. On October 28, 2009, I received another demand from Fu to report for work at the new location. (A copy of the notice in the original Chinese and in English translation is attached hereto as Exhibit J.) I refused to go. Since then, I have done no work for ABAT.

21.     On November 17, 2009, I filed an amended complaint. Within a day I received another text message threatening the lives of my family and me: "All of you now have to be careful, waiting to give you wreath, you all are a bunch of big liar."(The

text message is attached as Exhibit K) (The Chinese word for "wreath" used in the text message is a reference to a specific type of wreath: *a funeral wreath*.) The physical and emotional effects of these threats on my wife and me are incalculable. We live in *daily* fear for our lives, but even more so, for our infant daughter.

CONCLUSION

22. As plaintiff I chose the United States District Court as the place to bring my lawsuit and I sincerely believe that United States would protect the interests of United States citizens. I hope that this Court will seriously consider our opposition to defendant's motion to dismiss.

Dated: January 21 , 2010

Sui-Yang Huang

# Exhibit A



THE UNITED STATES OF AMERICA

PROTECTED ★ PROTECTED ★ PROTECTED

No. 26970925

CERTIFICATE OF NATURALIZATION

Personal description of holder as of date of naturalization:

Date of birth: APRIL 28, 1958

Sex: MALE

Height: 5 feet 5 inches

Marital status: MARRIED

Country of former nationality: CHINA, PEOPLES REPUBLIC OF

INS Registration No. A074445646

I certify that the description given is true, and that the photograph affixed hereto is a likeness of me:

Sui - Yang Huang
(Complete and true signature of holder)

Be it known that, pursuant to an application filed with the Attorney General

at: SAN FRANCISCO, CALIFORNIA

The Attorney General having found that:
SUI - YANG HUANG

then residing in the United States, intends to reside in the United States when so required by the Naturalization Laws of the United States, and had in all other respects complied with the applicable provisions of such naturalization laws, and was entitled to be admitted to citizenship, such person having taken the oath of allegiance in a ceremony conducted by the

US DISTRICT COURT OF NORTHERN CALIFORNIA

at: SAN FRANCISCO, CALIFORNIA

on: AUG 2 0 2002

that such person is admitted as a citizen of the United States of America.

Commissioner of Immigration and Naturalization

Sui - Yang Huang

IT IS PUNISHABLE BY U.S. LAW TO COPY, PRINT OR PHOTOGRAPH THIS CERTIFICATE, WITHOUT LAWFUL AUTHORITY.

FORM N-550 REV. 6-91

# Exhibit B









# Exhibit C

| Copy B--To Be Filed With Employee's FEDERAL Tax Return. | | 38-2099803 OMB No. 1545-0008 |
|---|---|---|
| a Employee's SSN 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 | 1 Wages, tips, other comp. 13846.14 | 2 Federal income tax withheld 1291.38 |
| b Employer ID no. (EIN) 22-2497491 | 3 Social security wages 13846.14 | 4 Social security tax withheld 858.48 |
| | 5 Medicare wages and tips 13846.14 | 6 Medicare tax withheld 200.76 |

c Employer's name, address, and ZIP code
ADVANCED BATTERY TECHNOLOGIES,IN
FORMER: BUY IT CHEAP.COM
21 WEST 39TH STREET, ROOM 2A
NEW YORK, NY 10018

d Control number

e Employee's name, address, and ZIP code
SUI-YANG HUANG

6336 SINGLETREE WAY
PLEASANTON, CA 94588-4463

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code See inst. for box 12 |
| 13 Statutory employee  14 Other | | 12b Code |
| Retirement plan | | 12c Code |
| Third-party sick pay | | 12d Code |

| NY 22-2497491 | 13846.14 | 0.00 |
|---|---|---|
| 15 State Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. 13846.14 | 19 Local income tax 0.00 | 20 Locality name NYC |

Form W-2 Wage and Tax Statement   **2008**   Dept. of the Treasury -- IRS
This information is being furnished to the Internal Revenue Service.

| Copy 2--To Be Filed With Employee's State, City, or Local Income Tax Return. | | 38-2099803 OMB No. 1545-0008 |
|---|---|---|
| a Employee's SSN 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 | 1 Wages, tips, other comp. 13846.14 | 2 Federal income tax withheld 1291.38 |
| b Employer ID no. (EIN) 22-2497491 | 3 Social security wages 13846.14 | 4 Social security tax withheld 858.48 |
| | 5 Medicare wages and tips 13846.14 | 6 Medicare tax withheld 200.76 |

c Employer's name, address, and ZIP code
ADVANCED BATTERY TECHNOLOGIES,IN
FORMER: BUY IT CHEAP.COM
21 WEST 39TH STREET, ROOM 2A
NEW YORK, NY 10018

d Control number

e Employee's name, address, and ZIP code
SUI-YANG HUANG

6336 SINGLETREE WAY
PLEASANTON, CA 94588-4463

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code |
| 13 Statutory employee  14 Other | | 12b Code |
| Retirement plan | | 12c Code |
| Third-party sick pay | | 12d Code |

| NY 22-2497491 | 13846.14 | 0.00 |
|---|---|---|
| 15 State Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. 13846.14 | 19 Local income tax 0.00 | 20 Locality name NYC |

Form W-2 Wage and Tax Statement   **2008**   Dept. of the Treasury -- IRS

This information is being furnished to IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

| Copy C--For EMPLOYEE'S RECORDS (See Notice on back.) | | 38-2099803 OMB No. 1545-0008 |
|---|---|---|
| a Employee's SSN 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 | 1 Wages, tips, other comp. 13846.14 | 2 Federal income tax withheld 1291.38 |
| b Employer ID no. (EIN) 22-2497491 | 3 Social security wages 13846.14 | 4 Social security tax withheld 858.48 |
| | 5 Medicare wages and tips 13846.14 | 6 Medicare tax withheld 200.76 |

c Employer's name, address, and ZIP code
ADVANCED BATTERY TECHNOLOGIES,IN
FORMER: BUY IT CHEAP.COM
21 WEST 39TH STREET, ROOM 2A
NEW YORK, NY 10018

d Control number

e Employee's name, address, and ZIP code
SUI-YANG HUANG

6336 SINGLETREE WAY
PLEASANTON, CA 94588-4463

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code See inst. for box 12 |
| 13 Statutory employee  14 Other | | 12b Code |
| Retirement plan | | 12c Code |
| Third-party sick pay | | 12d Code |

| NY 22-2497491 | 13846.14 | 0.00 |
|---|---|---|
| 15 State Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. 13846.14 | 19 Local income tax 0.00 | 20 Locality name NYC |

Form W-2 Wage and Tax Statement   **2008**   Dept. of the Treasury -- IRS

| 8 AW24UP | NTF 2572428 | Copyright 2008 Greatland/Nelco |
|---|---|---|

| Copy 2--To Be Filed With Employee's State, City, or Local Income Tax Return. | | 38-2099803 OMB No. 1545-0008 |
|---|---|---|
| a Employee's SSN 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 | 1 Wages, tips, other comp. 13846.14 | 2 Federal income tax withheld 1291.38 |
| b Employer ID no. (EIN) 22-2497491 | 3 Social security wages 13846.14 | 4 Social security tax withheld 858.48 |
| | 5 Medicare wages and tips 13846.14 | 6 Medicare tax withheld 200.76 |

c Employer's name, address, and ZIP code
ADVANCED BATTERY TECHNOLOGIES,IN
FORMER: BUY IT CHEAP.COM
21 WEST 39TH STREET, ROOM 2A
NEW YORK, NY 10018

d Control number

e Employee's name, address, and ZIP code
SUI-YANG HUANG

6336 SINGLETREE WAY
PLEASANTON, CA 94588-4463

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code |
| 13 Statutory employee  14 Other | | 12b Code |
| Retirement plan | | 12c Code |
| Third-party sick pay | | 12d Code |

| NY 22-2497491 | 13846.14 | 0.00 |
|---|---|---|
| 15 State Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. 13846.14 | 19 Local income tax 0.00 | 20 Locality name NYC |

Form W-2 Wage and Tax Statement   **2008**   Dept. of the Treasury -- IRS

Printed on Recycled Paper   FORM 5221

# Exhibit D

10-K 1 advancedbatteryform10k123108.htm ADVANCED BATTERY TECHNOLOGIES, INC. FORM 10-K DECEMBER 31, 2008

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 10-K

☒   ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.
For the fiscal year ended December 31, 2008.

OR

☐   TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.

Commission File No. 0-13337

ADVANCED BATTERY TECHNOLOGIES, INC.
(Name of Small Business Issuer in its Charter)

| Delaware | 22-2497491 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer ID Number) |

21 West 39th Street, Suite 2A, New York, NY 10018
(Address of principal executive offices)

Issuer's Telephone Number, including Area Code: 212-391-2752

Securities Registered Pursuant to Section 12(b) of the Act: None
Securities Registered Pursuant to Section 12(g) of the Act:

Common Stock, $.001 par value per share

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 406 of the Securities Act.   Yes __ No ✓

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes __ No ✓

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Sections 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ✓ No __

indicate by check mark disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [ ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check One)

Large accelerated filer ☐    Accelerated filer ☒    Non-accelerated filer ☐    Small reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes __ No ✓

State the aggregate market value of the voting and non-voting common equity held by non-affiliates, computed by reference to the price at which the common equity was sold, or the average bid and ask prices of such common equity, as of a specified date within the past 60 days.

The aggregate market value of the Registrant's common stock, $.001 par value, held by non-affiliates as of March 12, 2009 was $ 78,590,584.

As of March 12, 2009 the number of shares outstanding of the Registrant's common stock was 54,662,067 shares, $.001 par value.

**DOCUMENTS INCORPORATED BY REFERENCE: None**

**FORWARD-LOOKING STATEMENTS: NO ASSURANCES INTENDED**

*In addition to historical information, this Annual Report contains forward-looking statements, which are generally identifiable by use of the words "believes," "expects," "intends," "anticipates," "plans to," "estimates," "projects," or similar expressions. These forward-looking statements represent Management's belief as to the future of Advanced Battery Technologies. Whether those beliefs become reality will depend on many factors that are not under Management's control. Many risks and uncertainties exist that could cause actual results to differ materially from those reflected in these forward-looking statements. Factors that might cause such a difference include, but are not limited to, those discussed in the section entitled "Risk Factors." Readers are cautioned not to place undue reliance on these forward-looking statements. We undertake no obligation to revise or publicly release the results of any revision to these forward-looking statements.*

## PART 1

**ITEM 1          BUSINESS**

Advanced Battery Technologies, Inc. is a holding company with one subsidiary:  Cashtech Investment Limited, a British Virgin Islands corporation.  Cashtech Investment Limited is also a holding company with only one subsidiary:  Heilongjiang ZhongQiang Power-Tech Co., Ltd., a China limited liability company ("ZQ Power-Tech").  Advanced Battery Technologies also owns a 49% interest in Beyond E-Tech, Inc., a Texas corporation that distributes cellular telephones in the United States.

*ZQ Power-Tech*

ZQ Power-Tech is a limited liability company that was organized under the laws of the People's Republic of China in August 2002.  ZQ Power-Tech's offices and manufacturing facility are located in northern China, in the Province of Heilongjiang, in the Economy & High-Tech Development Zone of Shuangcheng, which is a suburb of Harbin.  The location is approximately 1,000 km northeast of Beijing.

The Harbin Institute of Technology is one of the leading technological institutions in Asia.  Two of its engineering professors now serve on ZQ Power-Tech's Scientific Advisory Board, along with a professor of engineering at the China Engineering Academy.  This close association with the Harbin Institute of Technology provides ZQ Power-Tech with a rich source of technological talent, such that ZQ Power-Tech's research staff is filled by experienced engineers, many with masters and Ph.D degrees.

ZQ Power-Tech designs, manufactures and markets rechargeable polymer lithium-ion ("PLI") batteries.  PLI batteries produce a relatively high average of 3.8 volts per cell, which makes them attractive in terms of both weight and volume.  Additionally, they can be manufactured in very thin configurations and with large footprints.  PLI cells can be configured in almost any prismatic shape, and can be made thinner than 0.0195 inches (0.5 mm) to fill virtually any shape efficiently.  This combination of power and versatility makes rechargeable PLI batteries particularly attractive for use in consumer products such as portable computers, personal digital assistants (PDA's) and cellular telephones.

1

Exhibit E

# Employment Contract

Party 'A':  ABAT

Party 'B':  Dr. Suiyang Huang

After cordial consultations regarding Party A's employment of Party B as Chief Technology Officer, the following agreement has been reached:

I.  Position: Chief Technology Officer, ABAT
II.  Term of Appointment: 5 years, from September 1, 2008 until August 31, 2013.
III.  Responsibilities During Term of Appointment:
    1.  Responsible for overall management of technology.
    2.  Responsible for formulating medium-term and long-term plans for technical development and technical direction, and implementation thereof.
    3.  Responsible for formulating near-term plans for new product development, and implementation thereof.
    4.  Responsible for formulating scientific research plans, technological improvement plans, and implementation thereof.
    5.  Responsible for new product development and applications development.
    6.  Responsible for the approval of technical standards and rules of operation for technical processes.
    7. Responsible for resolving any major technical problems in the manufacturing process affecting product quality.
    8.  Responsible for the technical development of technical personnel.
    9.  Responsible for the approval of new equipment acquisitions and the improvement of old equipment.

IV.  Use of Patents
    From the date of signature of this contract, no patent and no pending patent (30 in total) already belonging to Party B may be

transferred to, or used by, any third party.  Party B hereby guarantees that during the term of the contract, no legal dispute pertaining to these patents and pending patents (30 in total) shall arise.

V.    Compensation During Term of Appointment

1.  After this Contract has become effective – and on November 30, 2008 – Party A shall be responsible for completing a grant of 200,000 shares of ABAT.

2.  Annual Salary: $60,000 USD

VI.   The two parties shall resolve, through friendly consultations, any matters related to a failure to fulfill this contract.

VII.  After the contract has expired, the two parties may extend the term through mutual consultation.  Prior to the end of the term of this contract, with mutual agreement, the two parties may terminate the contract, but are required to give one month's notice.

VIII. This contract will be held in triplicate.  Upon signature as acknowledgement, the contract shall become effective, and each party shall retain one copy of the contract; Party 'A' shall file one copy of the contract with the corporate human resources office.

Party 'A': ABAT          Party 'B' : (signed *"Suiyang Huang"*)

Representative: (signed *"Zhiguo Fu"*)

August 30th, 2008

# 聘 用 合 同

甲方：美国 ABAT 公司

乙方：黄穗阳博士

双方经友好协商，就甲方聘任乙方为公司技术总监达成如下协议：

一、　聘任职务：美国 ABAT 公司技术总监

二、　聘任期限：五年，自二零零八年九月一日起至二零一三年八月十一日止。

三、　任期职责：

1. 负责主抓技术的全面管理工作。

2. 负责制定公司的中长期技术发展规划，技术路线，并组织实施。

3. 负责编制近期新产品发展计划并组织实施。

4. 负责制定科研规划，技术改造规划，并组织实施。

5. 负责组织新产品开发及开发应用工作。

6. 负责技术标准和工艺操作规程的审批。

7. 负责解决生产过程中产品质量出现的重大技术问题。

8. 负责对技术人员的技术培养工作。

9. 负责审定新设备采购及旧设备改造工作。

四、　专利应用

本合同签定生效日起，乙方已获所有专利及申请专利（30 项），

不能和第三方转让及应用,乙方保证现有专利及申请专利(30 项)

在合同期内不会出现任何法律纠纷。

五、　聘用期内待遇

1. 赠予美国 ABAT 股票贰拾万股,待合同生效后,由甲方负责于

*2008*年 *11* 月 *30* 日办理完毕。

2. 年薪资为:六万美元

六、　合同未尽事宜,双方友好协商解决。

七、　本合同期满后,经双方协商同意可延续合约,合同期满前,经

双方协商同意可以解除本合同,但需提前一个月提出。

八、　本合同一式三份,经甲乙双方签字确认以后生效,双方各持一

份,甲方人事部备案一份。

甲方:美国 ABAT 公司　　　　　　　　乙方:

代表:

二零零八年八月三十日

# Memorandum

Mr. Zhiguo Fu, chairman of the board of directors of ABAT, and Dr. Suiyang Huang concluded and signed an employment contract for the position of Chief Technology Officer on August 30th, 2008.  Under that agreement, they agreed to the granting of 300,000 shares of ABAT's stock to Dr. Suiyang Huang, as follows: 200,000 shares of stock, as specified in the employment contract; Party A will also be responsible for the transfer of an additional 100,000 shares to persons who shall be designated by Dr. Suiyang Huang (by name and with legal identification).  This Memorandum and the Employment Contract have equal legal force.

(Concluded on September 30, 2008)


Party 'A': ABAT                         Party 'B': (*signed "Suiyang Huang"*)

Representative: (*signed "Zhiguo Fu"*)


August 30th, 2008

# 备 忘 录

　　美国 ABAT 公司董事局主席付治国先生与黄穗阳博士，于 2008 年 8 月 30 日签订了技术总监聘任合同。按双方约定赠予黄穗阳博士叁拾万股美国 ABAT 公司的股票，其中：贰拾万股股票标明在聘用合同内。另拾万股股票由黄穗阳博士指定人员（包括姓名，法定证明）由甲方负责转入。本备忘录与聘用合同具有同等法律效力。

（2008 年 9 月 30 日办理完毕）

甲方：美国 ABAT 公司　　　　　　　　乙方：

代表：

　　　　　　　　　　　　　　　　　　　二零零八年八月三十日

# Affidavit of Translation

STATE OF MARYLAND   )
           )SS:
COUNTY OF MONTGOMERY )

  I, Victoria Segal, am a professional translator and interpreter, fluent in English and Chinese. (See my attached resume.) At the request of Dai & Associates, P.C., I translated the attached Chinese Language document into English. A copy of my translation also is attached. I hereby certify that the attached translation is, to the best of my knowledge and ability, a true and accurate translation of the Chinese language document.

  At the time I translated the Chinese language document, I was (and remain) unaware of the purpose for which it was translated and which party, if any, Dai & Associates, P.C. represents.

Dated: November __18__ , 2009

_____
Victoria Segal

Subscribed and sworn to
before me on : November __18__ , 2009

_____
Notary Public

TRENDY INGRAM
NOTARY PUBLIC
Prince George's County, Maryland
My Commission Expires February 22, 2013

# Victoria Segal

US phone: 301-437-3848
email: vickysegal2@yahoo.com

## Mandarin Simultaneous Interpretation

## POLITICAL

**1999-2003: Staff Interpreter, United States Department of State, Washington**
- Staff interpreter for *Presidents Bush and Jiang* at *Crawford, Texas Presidential Ranch*
- Staff Interpreter for *Presidents Clinton and Bush's* meetings with *China's top leaders*
- Staff Interpreter for top-level talks, negotiations, visits and events between the US and China
- Staff Interpreter for *Vice President Cheney, Secretary Powell,* and *Secretary Rumsfeld*

**1992-2009: Contract Interpreter, United States Department of State, Washington**
- Interpretation for *President Clinton* at *1998 and 1999 China Summits*
- Interpretation for *President Clinton* at *State Dinner, Press Conferences, Phone Calls, etc.*

**1998-2003: United Nations and APEC Presidential Summit Meetings, NY, Shanghai**
- *Presidents Bush*'s and *Clinton's* meetings and press conference with China's *President Jiang*

**2001:       United Nations Session on UNEP Protocol, Montreal, CANADA**
- *Chinese booth* interpreter

## BUSINESS/FINANCE

**1999:       China's WTO Accession -- Final Round of Bilateral Trade Talks, Beijing**
- *Ambassador Barshefsky's* historic negotiations, concluded a 13-year deal with China

**1998-2009: United States Department of the Treasury, Beijing, CHINA/Washington, DC**
- Treasury *Secretaries Rubin/Sommers/O'Neill/Paulson/Geithner's*   talks with *China's* leaders
- Joint Economic Commission/ Strategic Economic Dialogue Plenary Meetings in simultaneous

**1998-2009: United States Department of Commerce, Washington, DC/Beijing, CHINA**
- Commerce *Secretary's* press conferences and bilaterals with   *China*
- Commerce *Secretary's* JCCT events/ bilaterals with *China*

**1999-2009: International Monetary Fund, Washington, DC**
- Bilateral and multilateral seminars, lectures and technical presentations on international finance

**1998-2009: The World Bank, Washington, DC/Beijing, CHINA**
- Bilateral and multilateral conferences, and World Bank project board meetings

**1993-2006: General Electric Company, Crotonville, NY**
- Annual China Executives Management Training Course

**1994-2000: China Development Finance Company Ltd., Hong Kong**
- Roadshow Presentations by Chinese companies to foreign investors

## LEGAL

**1998-2009: High-level Sino-US Conferences on the Bilateral Legal Issues**
- Simultaneous interpretation for official presentations, bilateral dialogue, negotiations and site visits

**1995-2003: New Jersey Superior Courts, Trenton, NJ**
- Certified as Master Interpreter for all cases

**1997:       Rice, Fowler, Kingsmill, Vance, Flint & Rodriguez, L.L.P., New Orleans**
- International depositions for major class-action lawsuit against Chinese state-owned shipping company

# TECHNICAL

**1998-2009: United States Department of Agriculture, Beijing, CHINA/Washington DC**
- Agriculture *Secretaries Glickman, Veneman, and Vilsack's* talks with *China's* ministers
- Working-level technical talks on beetles, pests, wheat, citrus, infestations and chemical treatments

**2000-2001: IBM, EMC Storage, Sony Broadband, NY, DC, Atlanta, New Orleans**
- Technical conferences, technical sales meetings, training sessions for engineers and managers

**1994-2007: United States Department of Energy National Laboratories, CA/NM/Beijing**
- Technical seminars on nuclear, renewable and alternative energy technologies

**1994-1999: General Electric Aircraft Engines, Cincinnati, OH**
- Annual one-week technical and mechanical customer training program

**2006: National Oceanic and Atmospheric Administration, Washington, DC**
- Technical discussions on cooperative projects between the US and China

# LIVE RADIO BROADCAST INTERPETATION

**1997-2009: *Voice of America* Daily Chinese TV Programs, Washington, DC**
- Live interpretation into Mandarin in VOA studio in real time on various topics

**1998-2009: Presidential and Cabinet-level Speeches, Washington, DC**
- Live interpretation of political speeches, *State of the Union Addresses*, and speeches given abroad

**1998-2006: CSPAN Cable TV Company, Washington, DC**
- Simultaneous interpretation of inaugural and other speeches by Taiwanese leaders

# LECTURING/TESTING

**1995-1999: New Jersey Superior Courts, Trenton, NJ**
- Developed Mandarin Interpreter Screening Exam, and   also screened and tested interpreters

**1998-2003: United States Department of State, Washington, DC**
- Tested/evaluated/trained Mandarin escort/seminar/conference interpreters

**1996: US-China People's Friendship Association, Washington, DC**
- Lectured on how and when interpreting fits into international exchanges

# WRITTEN TRANSLATION

**1990-2009: Part-time Written Translation to Supplement Full-time Interpreting**
- Joint venture contracts; Organic Chemistry Reports; Official Documents; Academic Papers
- Monterey Institute Master's Thesis: Translation of modern Chinese novel **The Chess King**

# EDUCATION BACKGROUND

**Master of Arts:**    **Translation/Interpretation (Mandarin), 9/92**
Monterey Institute of International Studies

**Bachelor of Arts:**    **Chinese Language and Literature, 6/88**
Princeton University

**Additional Education:**    **9 Years Working in all-Mandarin Environment**
China, Taiwan and Hong Kong
**8-Year Immersion in Chinese Families**
Taiwan, China

# Exhibit F



# Advanced Battery Technologies Appoints New Chief Technology Officer

Thursday, September 04, 2008 8:01 AM

NEW YORK and HARBIN, China, Sept. 4, 2008 (GLOBE NEWSWIRE) -- Advanced Battery Technologies, Inc. (Nasdaq:ABAT) today named Dr.Suiyang Huang as its new Chief Technology Officer. Dr. Huang, who was formerly the C.T.O. for Shenzhen B&K Electronic Co., Ltd, will spearhead all of Advanced Battery Technology's future technology development plans. Advanced Battery Technologies, Inc. develops, manufactures, and distributes rechargeable polymer lithium-ion (PLI) battery cells for use in electric vehicles, mining equipment, and a variety of other consumer electronics.

Dr. Suiyang Huang will be responsible for all aspects of ABAT's new product development plans. He is expected to upgrade the existing ABAT technology, as well as to improve product quality by upgrading production processes. Dr. Huang will manage technology standards and production procedures as well as focus ABAT's R&D department towards creating a better battery for both existing and future applications.

Dr. Suiyang Huang is one of the most well respected minds in the Chinese battery industry. He holds a Ph.D from the Universite de Bordeaux, and has over thirty papers published throughout the world. Dr. Huang personally owns 7 U.S and 20 Chinese patents.

Commenting on the CTO appointment, Zhiguo Fu, CEO of Advanced Battery Technologies, said, "The appointment of Dr. Suiyang Huang to the Chief Technology Officer position fills an important and strategic leadership role in our company. Technology is our lifeblood in an industry where innovation drives competition and customer value. Dr. Suiyang Huang's record as a pioneer in the field is not only evident in China but worldwide. With his help, we will set the standards for China's EV industry."

Mr. Fu also added, "The CTO role at ABAT requires strong leadership skills, technical background that is innovative, and forward thinking. This role also demands experience second to none combined with vision into the future. We believe that Dr. Suiyang Huang embodies that role, and we are elated to have him on board."

About Advanced Battery Technologies, Inc.

Advanced Battery Technologies, Inc., founded in September 2002, develops, manufactures and distributes rechargeable Polymer Lithium-Ion (PLI) batteries. The Company's products include rechargeable PLI batteries for electric automobiles, motorcycles, mine-use lamps, notebook computers, walkie-talkies and other electronic devices. ABAT's batteries combine high-energy chemistry with state-of-the-art polymer technology to overcome many of the shortcomings

Advanced Battery Technologies Appoints New Chief Technology Officer

associated with other types of rechargeable batteries. The Company has a New York office, with its executive offices and manufacturing facilities in China. For more information about Advanced Battery Technologies, Inc. (ABAT), please visit: http://www.abat.com.cn.

Safe Harbor Statement:

This news release contains forward-looking statements within the meaning of the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995, may involve risks, uncertainties and other factors that may cause the company's actual results to be materially different from any future results or performance suggested by the forward-looking statements in this release. These risks and uncertainties include, without limitation, risks that the results of future performance will not be consistent with the forward-looking statements, risks that the backlog will not be fulfilled due to reasons of either the Company or the customer, and the risks that the batteries of competitors receive better market acceptance than those of the Company's PLI batteries. We undertake no obligation to revise or update publicly any forward-looking statements.

```
CONTACT: Informed IR
         John Tsemberides
         877.890.4440
         Cell: 917.734.1524
         john@informedIR.com
         44 Wall Street 12th floor
         New York, N.Y. 10005
```

(Source: PrimeZone )

---

|  | **Rate this Commentary** |
|---|---|

|  | ↓ **Comments (0)** |
|---|---|
| No Comments |  |

# Exhibit G

通知
### Notice

美国公司、深圳公司、黄穗阳：

ABAT, SABAT and Suiyang Huang,

因黄穗阳工作调动，现将调动后的工资支付方式及调整后的月工资标准通知如下：

Due to the job change, Suiyang Huang's salary will be adjusted according to the statements as below.

一、　　美国公司自 2009 年 8 月 1 日起停发黄穗阳工资。

1. American ABAT stops paying Suiyang Huang from August 1, 2009.

二、　　黄穗阳工资调整为每月一万元人民币，执行时间为 2009 年 8 月 1 日起。

2. Suiyang Huang's salary was adjusted to ten thousand RMB per month from August 1, 2009.

三、　　自 2009 年 8 月 1 日起黄穗阳工资由深圳中强按实际考勤支付。

3. SABAT (Shenzhen Zhongqiang New Energy Technology Co., Ltd.) shall pay salary to Suiyang Huang according to his work attendance from August 1, 2009.

特此通知。

It is hereby noticed.

董事长：付治国

Chairman: Zhiguo Fu

二零零九年八月四日

August 4, 2009

# 通　　知

美国公司、深圳公司、黄穗阳：

　　因黄穗阳工作调动，现将调动后的工资支付方式及调整后的月工资标准通知如下：

　　一、美国公司自 2009 年 8 月 1 日起停发黄穗阳工资。

　　二、黄穗阳工资调整为每月壹万元人民币，执行时间为 2009 年 8 月 1 日起。

　　三、自 2009 年 8 月 1 日起黄穗阳工资由深圳中强按实际考勤支付。


　　特此通知。


董事长：

二 00 九年八月四日

## Affidavit of Translation

STATE OF MARYLAND      )
                               )SS:

COUNTY OF QUEENS       )

     I, Xiaolan Lan, graduated from Dalian Maritime University in China and received a Bachelor of Law Degree. Later, I studied in New York University School of Law and received a Master of Law degree. I am fluent in English and Chinese.

     I am currently an associate of Dai & Associates, P.C., I was caused to translate the foregoing Chinese notice dated on August 4, 2009 into English. A copy of my translation also is attached.

     I hereby certify that the attached translation is, to the best of my knowledge and ability, a true and accurate translation of the Chinese language document.

Dated: January __19__, 2010

_____
Xiaolan Lan

Subscribed and sworn to
before me on : January __19__, 2010

_____
Notary Public

DAWEI GONGSUN
NOTARY PUBLIC STATE OF NEW YORK
NO. 02GO6112964
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES JULY 19, 2012

# Exhibit H



You don't want to die? Fucking you.



If you don't want to die earlier, you must shut up. Otherwise, you shall die no matter where you are in the world.



You don't want to die? Be careful that your whole family will be killed. If you don't believe, wait and see. Fucking you.

## Affidavit of Translation

STATE OF MARYLAND    )
            )SS:
COUNTY OF QUEENS    )

   I, Xiaolan Lan, graduated from Dalian Maritime University in China and received a Bachelor of Law Degree. Later, I studied in New York University School of Law and received a Master of Law degree. I am fluent in English and Chinese.

   I am currently an associate of Dai & Associates, P.C., I was caused to translate the foregoing Chinese text messages sent on October 1, 2009, October 2, 2009 and October 6, 2009 into English. A copy of my translation also is attached.

   I hereby certify that the attached translation is, to the best of my knowledge and ability, a true and accurate translation of the Chinese language document.

Dated: January _19_ , 2010

                    _____
                       Xiaolan Lan

Subscribed and sworn to
before me on : January _18_ , 2010

_____
   Notary Public

DAWEI GONGSUN
NOTARY PUBLIC STATE OF NEW YORK
NO. 02GO6112984
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES JULY 19, 20__

# Exhibit I

Notice

American ABAT, Harbin ABAT, Wuxi ABAT and Huang Sui-yang:

According to the decision of ABAT director board, Huang Sui-yang is layed off from ABAT's CEO position and now his position is Technical Engineer. His monthly salary is 8,000 RMB per month and awarded 5,000 shares of ABAT's stock per year. In addition, Huang Sui-yang shall come to Harbin on October 27, 2009 and work at ABAT's Harbin production facility for equipment improvement at Building A and B.

After receiving this notice, be prepared to come to Harbin.

This is the notice.

Chairman of the board: Fu Zhiguo (signature)

# 通　　知

美国 ABAT、哈尔滨中强、无锡中强、黄穗阳：

　　根据 ABAT 董事会决定，撤消黄穗阳技术总监职务，现任职务为工艺工程师，工资待遇每月捌仟元人民币，每年奖励五千股 ABAT 股票。另：请黄穗阳于 2009 年 10 月 27 日到 ABAT 哈尔滨生产基地参加制定对 A、B 栋设备改造工作事宜。

　　望接此通知后，作好来哈准备。

　　特此通知。

董事长：

二〇〇九年十月二十五日

# Exhibit J

# Notice

Huang Sui-yang:

You must come to Harbin production facility on Oct-29, 2009 and attend the project of equipment improvement for Buildings A and B. You must obey to this work arrangement from the company.

This is the notice.

Chairman of the director board: Fu Zhiguo (signature)

2009-10-28

# 通　知

黄穗阳：

　　请你务必于 2009 年 10 月 29 日到哈尔滨生产基地参加对 A、B 栋设备改造方案的制定，必须服从公司总体工作安排。

　　特此通知。

董事长：

二〇〇九年十月二十八日

# Affidavit of Translation

STATE OF MARYLAND          )
                           )SS:
COUNTY OF QUEENS           )

I, Xiaolan Lan, graduated from Dalian Maritime University in China and received a Bachelor of Law Degree. Later, I studied in New York University School of Law and received a Master of Law degree. I am fluent in English and Chinese.

I am currently an associate of Dai & Associates, P.C., I was caused to translate the foregoing Chinese notice dated on October 28, 2009 into English. A copy of my translation also is attached.

I hereby certify that the attached translation is, to the best of my knowledge and ability, a true and accurate translation of the Chinese language document.

Dated: January _19_ , 2010

_____
Xiaolan Lan

Subscribed and sworn to
before me on : January _19_ , 2010

_____
Notary Public

DAWEI GONGSUN
NOTARY PUBLIC STATE OF NEW YORK
NO. 02GO6112984
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES JULY 19, 20_12_

# Exhibit K



All of you now have to be careful, waiting to give

you wreath, you all are a bunch of big liar.

## Affidavit of Translation

STATE OF MARYLAND        )
                         )SS:
COUNTY OF QUEENS         )

I, Xiaolan Lan, graduated from Dalian Maritime University in China and received a Bachelor of Law Degree. Later, I studied in New York University School of Law and received a Master of Law degree. I am fluent in English and Chinese.

I am currently an associate of Dai & Associates, P.C., I was caused to translate the foregoing Chinese text messages sent on November 19, 2009 into English. A copy of my translation also is attached.

I hereby certify that the attached translation is, to the best of my knowledge and ability, a true and accurate translation of the Chinese language document.

Dated: January _19_, 2010

_____
Xiaolan Lan

Subscribed and sworn to
before me on : January _19_, 2010

_____
Notary Public

DAWEI GONGSUN
NOTARY PUBLIC STATE OF NEW YORK
NO. 02GO6112984
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES JULY 19, 20_11_