UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SUI-YANG HUANG,                                         :
                                                        :
                               **Plaintiff,**    :
                                                        :         09 CV 8297 (HB)
          - against -                              :
                                                        :         OPINION &
ADVANCED BATTERY TECHNOLOGIES, INC.,                    :         ORDER
                                                        :
                              **Defendant.**    :
                                                        :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

        This action arises out of an employment agreement for a Chief Technology Officer at a publicly held battery manufacturer in China. Plaintiff Sui-Yang Huang ("Plaintiff" or "Huang"), a United States citizen who resides primarily in China, brings this action against Defendant Advanced Battery Technologies, Inc. ("Defendant" or "ABAT"), a Delaware corporation with production facilities in China, for breach of the terms of his employment contract. Huang also claims to have suffered intentional infliction of emotional distress due to death threats that he received after bringing suit. ABAT moved to dismiss on *forum non conveniens* grounds and for failure to state a claim. Huang opposed the motion and filed a cross-motion for summary judgment. For the reasons that follow, ABAT's motion to dismiss is GRANTED on *forum non conveniens* grounds. As such, I need not reach Plaintiff's motion for summary judgment.

## I.  FACTUAL BACKGROUND

        Huang is a United States citizen with residences in Pleasanton, California and Schenzhen, Guandong Province, China. He currently resides in China, where he has three homes, along with his partner and their child. Plaintiff has some twenty-five years of experience in chemical engineering, and over twenty-one years experience "in the Chinese battery industry." Am. Compl. ¶ 6. He claims to hold seven United States and twenty Chinese patents "related to the design and manufacture of batteries." *Id.* Huang is also a professor at South China University of Technology and a researcher for the Chinese Academy of Sciences. Defendant ABAT is a corporation that manufactures and distributes polymer lithium-ion batteries. ABAT is

1

incorporated in Delaware and has a New York office. All but one of ABAT's executives, as well as its production facilities and "headquarters," are located in Harbin, China.

Huang was the founder and CEO of a company called Luke Battery Corporation ("LBC"),[1] and his father financed its formation and was its sole shareholder. On August 30, 2008, Huang, acting as an agent for his father, entered into an acquisition agreement with ABAT Chairman and CEO Zhiguo Fu ("Fu") to sell LBC to ABAT for one million dollars. In conjunction with the sale, the company was renamed Shenzhen Advanced Battery Technologies Co., or "SABAT." Contemporaneously, Huang entered into two other agreements with ABAT that pertained directly to him. In the first agreement, Huang licensed all of his patents to ABAT. Additionally, ABAT agreed to employ Plaintiff as the company's Chief Technology Officer for five years from September 1, 2008 to August 31, 2013 for a salary of $60,000 in U.S. dollars per year, as well as to provide him with 200,000 shares of ABAT stock. The second agreement[2] provided for an additional 100,000 shares of ABAT stock to be transferred to a designee of Huang's choice.

The nub of this dispute is over precisely when Huang was to receive the shares of stock. According to Defendant's translation, ABAT agreed to provide the 200,000 shares "during the time after the effective date of the contract, which Party A is responsible for completing no later than November 30, 2008," or according to one of Plaintiff's translations, "[a]fter this Contract has become effective – and on November 30, 2008." McPherson Decl., Ex. A; Huang Decl., Ex. E.[3] The agreement to provide 100,000 shares to Huang's designee "shall be completed on September 30, 2008" or was "concluded on September 30, 2008," depending on Plaintiff's translation.[4] Am. Compl., Ex. C; Huang Decl., Ex. E. Plaintiff interpreted this to mean that his designee would receive all 100,000 shares on September 30, 2008, and he would receive all 200,000 shares on November 30, 2008. Defendant, on the other hand, claims the shares were intended to be distributed on a pro rata basis over the five years of Plaintiff's employment.

---

[1] Oddly, since it has no bearing on this motion, the parties dispute the company's actual name. Defendant claims the company is called Shenzhen Shengxi Science and Technology Co., Ltd. ("Shenzhen SST"). Plaintiff's translated version of the Acquisition Agreement provides both names, *see* Am. Compl., Ex. A, though as noted, *infra*, Defendant challenges the accuracy of Plaintiff's translations.

[2] Defendant treats this agreement as an "addendum" to the "Employment Contract," rather than as a separate agreement.

[3] Plaintiff's initial translation, attached to the complaint, is in English as "Donate 200,000 stock shares of the American ABAT when this contract takes effect, Party A shall finish the transaction on November 30, 2008." Am. Compl., Ex. B.

[4] Defendant did not provide a translation of this part of the agreement.

According to Huang, neither he nor his designee received the shares by what he believed were the deadlines.  When Plaintiff confronted CEO Fu about this, Fu allegedly told Huang that "it would take until the end of the year to make the transfers."  Am. Compl. ¶ 11.  In early January 2009, Plaintiff received 40,000 of the 200,000 shares, while his designee received 20,000 of the 100,000 shares, consistent with Defendant's projected pro rata payments.  Plaintiff claims that this was not the agreement, and Fu actually told Huang that he "changed his mind and would not follow the contracts" because he was "afraid Huang would quit once he received his shares."  Am. Compl. ¶ 13.

On August 4, 2009, Fu allegedly informed Plaintiff by letter that due to a "job change," Huang would not longer be paid by ABAT, and instead would now be paid by SABAT at the greatly reduced salary of $17,000 per year.  *Id.* ¶ 14.  Huang continued to seek the remaining shares, did not receive them, was "threatened [by Fu]…about bringing any litigation," and ultimately brought suit on September 30, 2009.  *Id.* at ¶15.  Plaintiff claims that the day after he filed suit, he received death threats via text message to his cell phone directed at him and his family.  On October 25, 2009, Plaintiff was allegedly fired as ABAT's CTO by Fu, and directed to "work at an ABAT facility located over 1,800 miles from his home."  *Id.* at ¶ 16.  By contrast, Defendant claims that Plaintiff failed to perform his job duties, failed to report to work regularly, ignored direct orders from the CEO, did not respond to a request to check problems at a facility in October, was provided two formal notices to perform his job duties, and was ultimately terminated in November 2009.

Huang brings causes of action for breach of contract, intentional infliction of emotional distress, retaliation, breach of implied contractual covenant of good faith, and prima facie tort.  Defendant moved to dismiss the action on *forum non conveniens* grounds, or alternatively to dismiss the tort and implied contract claims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant believes this action would be better suited for litigation in China, where ABAT's primary facilities are located, where the agreement was negotiated, and where Plaintiff was employed.  Plaintiff opposed the motion and cross-moved for partial summary judgment on his breach of contract claim.  Oral argument was held on March 22, 2010.

## II.   DISCUSSION

### A.  Legal Standard

"[T]he doctrine of *forum non conveniens* contemplates the dismissal of lawsuits brought by plaintiffs in their favored forum in favor of adjudication in a foreign court."  *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 101 (2d Cir.2000).  A district court has "broad discretion" to apply this principle.  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).  The Second Circuit has "outlined a three-step process to guide the exercise of that discretion."  *Id.*  That process requires the court to (1) determine the degree of deference accorded to the plaintiff's forum choice; (2) consider the adequacy of the alternative forum to adjudicate the dispute; and (3) balance the private and public interests implicated by the choice of forum.  *Id.* at 153 (citing *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001)); *see also Aracruz Trading Ltd. v. Japaul Oil and Mar. Servs., PLC*, No. 08 Civ. 3511(JGK), 2009 WL 667298, at *2 (S.D.N.Y. Mar. 16, 2009).

### B.  Deference to Plaintiff's Forum Choice

Generally speaking, a plaintiff's choice of forum is entitled to significant deference.  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Iragorri*, 274 F.3d at 70-71 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)).  The Second Circuit found that the deference accorded to a plaintiff's choice of forum should be weighed on a "sliding scale depending on several relevant considerations."  *Iragorri*, 274 F.3d at 71.  Chiefly, the court must look at whether the choice was made due to a "bona fide connection" with the forum or for forum shopping purposes.  *Id.* at 72.  A court should consider the "totality of circumstances" that support or undermine the deference accorded to this choice.  *Norex*, 416 F.3d at 155.  Factors that counsel against dismissal include "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense."  *Iragorri*, 274 F.3d at 71; *see also Norex*, 416 F.3d at 155.

Here, Plaintiff chose the Southern District of New York to bring a diversity action for common law contract and tort claims.  His primary argument is that he is a United States citizen,

4

ABAT was incorporated in the United States, and ABAT was amenable to personal jurisdiction in this district because it has an office in New York. That Plaintiff is a United States citizen is highly relevant, but it is not itself dispositive. *See, e.g.,* ; *Iragorri*, 274 F.3d at 74 ("neither the plaintiff's citizenship nor residence, nor the degree of deference given to her choice of forum, necessarily controls the outcome"); *Wiwa*, 226 F.3d at 102 ("we apply the *Gilbert* factors in evaluating a *forum non conveniens* motion, even when the plaintiff is a U.S. citizen or resident"). Since Huang is a U.S. citizen, he should initially be accorded "great deference" for his choice of a U.S. forum. *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003). However, Plaintiff's United States residence, such as it is, finds him on the other side of the country in Pleasanton, California. While this is relevant, because the distance of the residence from the forum suggests less actual convenience for Plaintiff, it will not necessarily eliminate the deference normally accorded his choice where there is little suggestion of forum-shopping. *See Iragorri*, 274 F.3d at 73. Here, Plaintiff's choice to sue in New York to ensure personal jurisdiction over ABAT since they have an office here is not alone indicative of forum-shopping. Nonetheless, bringing suit in a forum twenty-five hundred miles away from one's residence is hardly the model of convenient litigation.

More importantly, Huang actually resides almost exclusively in China rather than at his residence in California. Significantly less deference need be accorded to a US citizen that permanently resides abroad since the US forum is obviously not as convenient as the foreign forum where the citizen lives. *See Iragorri*, 274 F.3d at 73 n.5, 75; *see also Cavlam Business Ltd. v. Certain Underwriters at Lloyd's*, *London*, No. 08 Civ. 2225 (JGK), 2009 WL 667272, at *4 (S.D.N.Y. Mar. 16, 2009) ("American nationals residing abroad are given little deference with respect to their choice of a forum in the United States"); *Seales v. Panamanian Aviation Co.*, No. 07 Civ. 2901 (CPS), 2009 WL 395821, at *11 (E.D.N.Y. Feb. 18, 2009) ("Because plaintiff [a dual citizen of the United States and Panama] was living abroad at the time this action was commenced, the deference due to his choice of a New York forum is diminished."). Here, while Plaintiff has a home in California, he resides primarily in China. Huang has three residences in China, where his partner and their child also live, and he refers to at least one of these residences as his "home." *See* Am. Compl. ¶16.[5] ABAT's production facilities are in

---

[5] While not in the Amended Complaint, the number of homes was disclosed by Plaintiff's counsel in a correspondence to this Court. Plaintiff claims a residence in Shenzhen, China. ABAT's production facilities are in

China and, as the description of his job duties in his employment agreement notes, his responsibilities include the "development of technical personnel" and "resolving any major technical problems in the manufacturing process," Huang's position as CTO required him to work primarily if not exclusively in China. *See* Huang Decl., Ex. E.  His previous position with SABAT (formerly LBC) was also in China, besides which he holds a professorship with a Chinese University and a research position with the Chinese Academy of Sciences.  Based on these facts, while Huang merits some deference for his forum choice, it is not the "great deference" ordinarily appropriate for a U.S. citizen who is also a resident in the United States in or near the chosen forum.

In support of his forum choice, Plaintiff points out that Defendant was incorporated in the United States and is therefore likewise a United States citizen.  The fact that ABAT was incorporated in Delaware may, in some cases, indicate some lesser inconvenience for defending a suit in the United States, but it is not a dispositive factor in the analysis of Plaintiff's forum choice.  *See, e.g., Pollux,* 329 F.3d at 74 ("it is an untenable leap of logic to jump from that holding to the blanket assertion that a plaintiff's choice of forum deserves presumptive deference simply because the chosen forum is defendant's home forum").  That ABAT has an office in New York is also relevant, as it further indicates that it would not be entirely inconvenient to litigate here.  However, as Defendant points out, the office has virtually no connection to this action.

Plaintiff also notes that the death threats, which came from China, make him fear for his security in that country.  Safety or government bias is a valid concern in a *forum non conveniens* analysis, but unlike cases where this played a significant role in the decision, Huang still resides in the country where he allegedly fears bringing suit. *See, e.g., Iragorri*, 274 F.3d at 75 (Florida residents fear for their safety if forced to litigate in Cali, Columbia); *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006) ("eminently reasonable" for Canadian residents to bring suit in U.S. rather than Egypt, where their property was seized by the government because they are Jewish). While I do not doubt the good faith of Plaintiff's fears, a concern about litigating in a foreign country is seriously diminished when the plaintiff still resides in that country.

---

Harbin, China.  In the complaint, Plaintiff alleges that ABAT ordered him to report to work "at an ABAT facility located over 1,800 miles from his home."  Am. Compl. ¶ 16.  Harbin is around 1750 to 2000 miles away from Shenzhen.

Other than Defendant's amenability to suit in New York, few other *Iragorri* factors suggest this forum is convenient or more appropriate than litigation in a Chinese court. Less deference is accorded a Plaintiff's choice where it appears that it was "motivated by forum-shopping reasons … such attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum." *Iragorri*, 274 F.3d at 71; *see also Norex*, 416 F.3d at 155. Plaintiff's residences are primarily on the other side of the globe in China, and at best across the country in California. As described more fully, *infra*, there are virtually no witnesses or evidence currently in this forum, and litigation in China would likely be more convenient and less expensive since most, if not all, of the witnesses and evidence are located in that country. There is little indication that Plaintiff's choice was expressly motivated by forum-shopping, but given the few reasons to sue in New York, it is worth noting that China has a somewhat tarnished reputation in United States fora, and Plaintiff may also be relying on what he may believe is the "habitual generosity" of New York juries. *See* Gallup, 2010 Country Favorability Ratings, http://www.gallup.com/poll/126116/Canada-Places-First-Image-Contest-Iran-Last.aspx (last visited May 6, 2010) (poll results show 53% of Americans view China unfavorably). Huang lives in China, made this agreement in China from a company essentially based in China, worked exclusively in China, and should have been reasonably aware that he might have to litigate in China.

### C. China as an Adequate Alternative Forum

The next step in the *forum non conveniens* analysis is to determine whether China would serve as an adequate alternative forum for this action. "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75. By contrast, "[a] forum may be deemed inadequate if it is characterized by a complete absence of due process or an inability of the forum to provide substantial justice," *Turedi v. Coca-Cola Co.*, 343 Fed. Appx. 623, 625-626 (2d Cir. 2009), or "if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently available, or if the forum provides a remedy so clearly unsatisfactory or inadequate that it is tantamount to no remedy at all." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir.

2009); *see also Norex*, 416 F.3d at 150 (where foreign forum would deem claim precluded, it is not adequate alternative). "[W]hile the plaintiff bears the initial burden of producing evidence of corruption, delay or lack of due process in the foreign forum, the defendant bears the ultimate burden of persuasion as to the adequacy of the forum." *Abdullahi*, 562 F.3d at 189.

      Here, a Chinese court is an adequate alternative forum for the purposes of this contract and tort action. Although confronted with dissimilar factual circumstances, courts have previously found China to be an adequate alternative for *forum non conveniens* purposes. *See, e.g., Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435 (dispute between Chinese corporation and Malaysian company over misrepresentations to Chinese admirality court dismissed in favor of suit in China); *S. Megga Telecomm. Ltd. v. Lucent Tech., Inc.*, No. 96-357-SLR, 1997 WL 86413, at *11 (D.Del. Feb. 14, 1997) (United States corporate defendant's counterclaims against Hong Kong corporate plaintiff for breach of contract and intellectual property violations are dismissed where adequate alternative forum exists in Chinese courts). This case presents a straightforward contractual dispute with similarly uncomplicated ancillary tort claims that a Chinese court can adequately manage. Defendant's expert on Chinese law has explained that Huang can sue ABAT and bring both contract and tort claims in a Chinese "Basic People's Court." *See* Li Decl. ¶¶ 25-33. According to the expert, Chinese Civil Procedure Law provides jurisdiction for a civil suit "in the place where the defendant has its domicile," and therefore Huang could sue in Harbin, where ABAT is primarily located. *Id.* ¶¶ 26-27. In addition to suit where ABAT is domiciled, Chinese procedure also allows a contract dispute to be heard by a court "where the contract is performed" or, in a tort action, where the "infringing act took place." *Id.* ¶¶ 28-31. Defendant's claim that most of Huang's work occurred near his residence in Shenzhen, he occasionally traveled to Harbin, and that the death threats he received were sent to a cell phone registered in China. As such, it is likely that he could also bring suit closer to his residence in Shenzhen. Additionally, Defendant's expert notes that a plaintiff that brings a contract or tort action, "may seek injunctive relief or monetary damages, including cessation of infringement, compensation for losses, payment of breach of contract damages, extension of apology, and others." *Id.* ¶ 32.

      Plaintiff's Chinese law expert claims that a Chinese forum would be inadequate because "[o]nly an employment contract between a Chinese company and Chinese/foreign worker will have legal force in China" and since both parties are U.S. citizens, the courts would not accept

the contract claim; the expert makes a similar argument for the tort claims. *See* Si Decl. ¶¶ 8-10. However, Plaintiff's expert does not cite any specific Chinese law in support of his argument, and Defendant's expert provided a detailed rebuttal with citations to Chinese procedural law that argue persuasively that a Chinese court would in fact accept these claims. That these claims may not be identical to those that he could bring in the United States does not render the forum inadequate. *See Norex*, 416 F.3d at 158 ("the availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies.") (quoting *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 74 (2d Cir. 1998)). Indeed, "some inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) (internal citations and quotations omitted).

Regardless, "the degree of certainty with which a movant must establish an adequate alternative forum may be relaxed if sufficient protection can be provided the non-movant by a conditional dismissal." *Norex*, 416 F.3d at 159-60 (citing *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan,* 273 F.3d 241, 247-48 (2d Cir.2001)); *see also Pollux*, 329 F.3d at 75. Here, Defendant has stipulated that it will consent to personal jurisdiction in a Chinese court for these civil actions, will toll any statute of limitations claim for 120 days from the date of dismissal by this Court, will make available any evidence or witnesses in its possession that the Chinese court may deem relevant, and pay any final post-appeal judgment awarded against it. Defendant's expert has sufficiently demonstrated that a Chinese court would likely be an adequate alternative forum for this dispute, and any concerns that it may not consider the case on its merits may be alleviated by Defendant's stipulations and conditional dismissal by this Court. In addition, given the massive distance between Plaintiff's residence in Shenzhen and ABAT's facilities in Harbin, this Court will further condition dismissal on Defendant's claim that the suit could be brought in a court near Plaintiff's residence.

### D. Balancing Private and Public Interest Factors

The final step in the process is to analyze and balance the private and public interest factors "to ascertain whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum proposed by the defendant." *Iragorri*, 274 F.3d at 73. Private interest

9

factors include, "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 74 (quoting *Gilbert*, 330 U.S. at 508); *see also Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998). Public interest factors include administrative difficulties for courts "when litigation is piled up in congested centers instead of being handled at its origin," the burden of jury duty on a community "which has no relation to the litigation," the local interest in "having localized controversies decided at home," and the avoidance of problems associated with applying foreign law. *See Gilbert*, 330 U.S. at 508; *Iragorri*, 274 F.3d at 74; *see also Alfadda*, 159 F.3d at 46.

In considering the balance of private factors, a court should "focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Iragorri* at 74. As explained in detail above, this is a law suit over the meaning of a contract that was negotiated in China by parties located in China, with additional tort claims related to death threats from a Chinese source. An analysis of these "precise issues" and the attendant underlying facts indicates that virtually all of the private factors favor a Chinese court as the more convenient forum. As the nature of Huang's employment responsibilities, his residences, and even his Chinese-registered cell phone indicate, the locus of both the contract and tort action is in China. *See Pollux,* 329 F.3d at 74 (dismissal of breach of contract claim for English forum appropriate where "[plaintiffs'] interactions with Chase were centered in London"). As one would surmise from the location of events, Defendant asserts that all or nearly all of the evidence and witnesses are located in China. Plaintiff does little to contradict this point, other than to argue that the case is so simple that the only necessary evidence is the contract attached to the complaint, and the only witnesses needed are Plaintiff and ABAT CEO Fu. While the case does seem to be a common contract dispute, my own experience with these cases indicates that whether easy or not, it is a rare day when no discovery is sought. This view was borne out by the different views expressed at a mediation session held between the parties before this Court. Indeed, Defendant plans to defend its termination decision in part based on claims of poor work performance, lackluster attendance, and misstatements about the number of patents Huang actually owns. As a consequence, potential evidence will doubtless include emails, performance evaluations, and

10

Chinese patent documents.  *See Alfadda*, 159 F.3d at 47 ("*all* the defendants and *nearly all* the documentary evidence are located in France") (emphasis in original).  Additionally, the few documents that are currently a part of the record, like the contract documents and death threat text messages, are all in Mandarin Chinese (hereafter "Mandarin"), a dialect fraught with nuance, most if not all of the witnesses apparently speak Mandarin and little to no English, and if tried here almost every document would need to be translated from Mandarin to English.  *See Blanco*, 997 F.2d at 982.  Further, the cost and availability of witnesses would likely be less in China, and as noted previously, Defendant stipulates it would make witnesses it controls outside of the jurisdiction, if any, available in China.

      Plaintiff's only refrain is that ABAT has a New York office, that he was paid in U.S. dollars through that office, and that ABAT trades its stock shares on the NASDAQ stock exchange.  Other than payment of Plaintiff's salary, there is no other indication that ABAT's New York office, which Defendant asserts is only a small "investor relations" office, has any connection to the facts in dispute in this matter.  The Second Circuit has previously upheld dismissal for *forum non conveniens* where "[t]he sole connection to the local forum … is the fact that payments under the Loan Agreement were to be made in dollars in New York City."  *See Blanco*, 997 F.2d at 982.

      The public factors also counsel dismissal in favor of a Chinese forum.  The meaning of an employment contract for a job located in China is precisely the sort of dispute where there is a local interest in deciding the interpretation of the agreement.  *See Gilbert*, 330 U.S. at 508; *Iragorri*, 274 F.3d at 74.  Further, Defendant accurately notes that under New York choice of law rules, contract and tort claims would in any event likely be governed by Chinese law.  There is no express choice of law provision in the agreement, and New York's "center of gravity" test, which considers factors like "the place of contracting, negotiation, and performance," all strongly favor the application of Chinese law.  *See, e.g, Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.* 448 F.3d 573, 583 (2d Cir. 2006) (describing test).  The tort claims arising out of the alleged death threats would also probably be governed by Chinese law, since the tortious act occurred in China and the choice of law revolves around conduct-regulation, i.e. whether a death threat is an actionable tort.  *See, e.g., GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) ("If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because

that jurisdiction has the greatest interest in regulating behavior within its borders."). Since Defendant intends to dispute the validity of Plaintiff's Chinese patents as a partial defense to the breach, Chinese patent law may also need to be considered. "When deciding a *forum non conveniens* motion, a court may properly rely on the difficulties attending the resolution of questions of foreign law." *Scottish Air Intern., Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996); *see also Pollux*, 329 F.3d at 74.

      Lastly, it is worth noting that this case is comparable to two other cases that were dismissed in favor of an alternative forum. In *Adamowicz v. Barclays Private Equity France S.A.S.*, this Court dismissed a securities action in favor of a French forum. *See* No. 05 Civ. 0961(HB), 2006 WL 728394 (S.D.N.Y. Mar. 22, 2006). There, the French citizen plaintiff resided in Connecticut, one defendant was American but stipulated to jurisdiction in France, the documents and witnesses were likely in France, the agreement at the heart of the dispute was written in French and executed in Paris, and French law would likely govern the interpretation of at least the supplemental common law claims. *See id.*, at *3-4. Similarly, in *Realuyo v. Villa Abrille*, Judge Koeltl dismissed a suit brought by a United States citizen in favor of a Philippines forum. *See* No. 01 Civ. 10158(JGK), 2003 WL 21537754 (S.D.N.Y. July 8, 2003). In that case, the plaintiff deserved "great deference" as a resident of New Jersey who brought suit in New York to ensure jurisdiction over the defendants, but both the private and public interest factors favored the Philippines because nearly all of the relevant materials and witnesses were related to and located in that forum. *See Realuyo*, 2003 WL 21537754, at *14.

      Let me not conclude without a caveat: that if this were a civil liberties lawsuit rather than a contract and tort case, my view with respect to the appropriateness of the forum could be different. *Accord Wiwa*, 226 F.3d at 103-05 (Alien Torts Claims Act, as supplemented by Torture Victim Prevention Act, "expresses a policy favoring receptivity by our courts" to such human rights litigation). Even in this case my concern about a fair trial free from corruption gives me pause. Yet with the conditions provided here, and because the law seems clear, I have concluded that the matter must be dismissed on *forum non conveniens* grounds.

### III.  CONCLUSION

      For the foregoing reasons, Defendant's motion to dismiss for *forum non conveniens* is GRANTED and the case is dismissed. The dismissal is conditioned on the Chinese forum's

acceptance of jurisdiction over the dispute, the above-detailed stipulations made by Defendant, and Plaintiff's ability, if he so chooses, to bring the action in a court near his residence in China.

The Clerk of the Court is instructed close the case and remove it from my docket.

**SO ORDERED**
May **26**, 2010
**New York, New York**

/s/ Harold Baer, Jr.
Hon. Harold Baer, Jr.
U.S.D.J.